David A. KERSH, Plaintiff,

v.

**BORDEN CHEMICAL, A DIVISION OF BORDEN, INC., A Foreign Corporation, Defendant.**

**BORDEN, INC., A Foreign Corporation, Third-Party Plaintiff,**

v.

**LIFE DISTRIBUTING, INC., a Michigan corporation, and Polar Foam, a Michigan corporation, Third-Party Defendants.**

Civ. A. No. 82–CV–74444–DT.

United States District Court,
E.D. Michigan, S.D.

June 10, 1988.

David A. Kersh, in pro. per.

Allan Meganck, Detroit, Mich., Daniel J. McCarthy, Troy, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

The issue before this Court is whether to enter a permanent injunction against the Plaintiff, David A. Kersh, which would prevent him from filing any new lawsuits unless he complied with certain conditions that had been set by this Court. This matter arises from the issuance of a Restraining Order by the Court on May 19, 1988. The Order set forth a lengthy demonstration of evidence which suggested that (1) Kersh had engaged in vexatious litigation tactics before this Court, as well as other courts, and (2) these tactics had severely interfered with the integrity of the judicial system. The Order also directed

Kersh to appear before this Court and explain:

why a permanent injunction should not be entered that would bar him from filing any new lawsuits in the United States District Court for the Eastern District of Michigan or in the Michigan state courts without leave of this Court. The hearing shall also consider the appropriate scope, if any, of such a permanent injunction.

On May 19, 1988, the Court entered a second Order which clearly established that the time of the Order to Show Cause hearing on May 31, 1988 would be at 8:30 a.m.[1] This corrected Order stated that:

It is the Order of this court that the Plaintiff, David Kersh, shall appear before this Court at 8:30 a.m. on May 31, 1988. The remaining portions of the previously issued May 19, 1988 Order, to which reference has been made, shall remain undisturbed and with full force and effect. *Should Kersh fail to appear at the scheduled time and place, his case shall be dismissed.*

(Emphasis added).

On the day and time set for the hearing, Kersh did not appear. Consequently, this Court dismissed his Complaint. At the hearing, the Court emphasized that Kersh had received full notice of the date and time of the hearing, citing his "Motion and Brief in Support of Request for Safe Passage and Adjournment of Hearing," in which he acknowledged "[t]hat this court has ordered the plaintiff to appear on May 31, 1988 at 8:30 a.m. or have his case dismissed."[2]

The Court entered its Order of Dismissal on May 31, 1988, and took the permanent injunction issue under advisement. In particular, the Court required additional time in which to review the several documents that had been recently filed by Kersh.[3] The Court is now ready to make its decision. Because this is a permanent injunction issue, the Court will make "Findings of Fact" and "Conclusions of Law," pursuant to *Fed.R.Civ.P.* 52.

The failure of Kersh to appear at the Order to Show Cause hearing on May 31, 1988 has precluded this Court from presenting numerous questions to him regarding his litigation activities.[4] This hearing had been scheduled for the purpose of giving him an opportunity to point out any misconceptions which this court may have about his litigation activities. In waiving his opportunity to do so, he has forced the Court to draw conclusions on the basis of the existing record without the benefit of his perspective.

FINDINGS OF FACT

1. *Kersh's Actions in This Case*

In the May 19, 1988 Order, several examples of Kersh's sanctionable actions regarding this Court and the other parties in the case were outlined. Due to Kersh's failure to appear at the Order to Show Cause hearing or to file any legal documents in opposition to the injunction, the Court will adopt these examples as being accurate summaries of this litigation.

First, concerning Kersh's activities toward opposing counsel, the Court makes the following findings:

1. He failed or refused to attend three independent physical examinations which had been scheduled by Polar Foam in connection with the instant cause. Polar Foam was subsequently obligated to assume the costs of the court reporter and the medical doctor, as well as the legal fees and costs which were incurred by the ne-

---

1. The original Order had erroneously stated the time of the hearing as 8:30 p.m.

2. Kersh's motion was filed on May 27, 1988. By issuing the Order to Show Cause on May 19, 1988, the Court gave Kersh more than adequate notice and time in which to prepare for the hearing. *See* Wright and Miller, *Federal Practice and Procedure* § 2949 at 468 (1973) (at least five days advance notice needed).

3. Thereafter, the Court extended the Restraining Order for ten more days for "good cause" shown. *Order* (May 31, 1988).

4. This Court has dealt with his supposed justifications for not appearing in another Order. The Court notes that even Kersh's *pro se* status cannot excuse his failure to appear since he has acknowledged notice. Moreover, although technically *pro se*, Kersh has extensive litigation experience as will be shown.

cessity of its counsel having set up the exams.

2. He failed or refused to sign a release which would have enabled Polar Foam to obtain copies of certain pertinent records from the Southfield, Michigan Fire Department.

3. He repeatedly failed to comply with a June 18, 1986 directive from this court to release and surrender certain records which had been determined to be relevant to the controversy and appropriate for discovery purposes.[*]

4. Borden's Second Supplemental Interrogatories were not answered by Kersh for a period of approximately nineteen months.

5. Borden was obligated to schedule Kersh's deposition on six separate occasions. Each deposition was rescheduled by Borden at the specific request of Kersh who generally cited other court commitments as the basis for the adjournment requests.

[*] This asterisk replaces the footnote in the original Restraining Order. This Court imposed certain evidentiary sanctions against him for his actions.

Kersh attempts to contradict these conclusions in his "Additional Brief" in Support of Disqualification. For example, he claims to have "no memory of requesting an adjournment" of the depositions.[5] However, his absence of memory does not constitute a denial that he failed to appear at any of the six depositions which had been scheduled by Borden.

Regarding the physical examinations, Kersh claims that he did not get notice from his former attorney upon whom the blame has been placed. However, Kersh then expresses uncertainty as to why he did not appear:

If, in fact, said notice exists plaintiff alleges they would have been in conflict with hearings plaintiff was required to attend or were set for times when Kersh was out of this State.[6]

This statement makes clear that he is quite uncertain whether he did, or did not, receive notice of the three physical examination dates. Indeed, this statement also shows that Kersh is quite willing and able to "invent" reasons for his nonappearance at proceedings which have been scheduled by his adversary or the Court. Thus, his attempted denials lack merit.

Regarding his actions before this Court, the Court also makes the following findings:

1. Despite repeated warnings by this Court, he has often failed or refused to serve legal papers or pleadings on opposing counsel.

2. Kersh has repeatedly sought delays in the commencement of these proceedings where the circumstances have suggested bad faith by him:

a. He sought to cancel an October 27, 1987 hearing before this court on the basis of an alleged medical examination at Mayo Clinic when, in fact, the attached documentation reflected a medical examination of November 10, 1987.

b. He scheduled elective surgery on a date which was designed to deliberately interfere with a court proceeding of this Court.

c. Despite representing to this Court that he was too ill for trial or to participate in legal proceedings, Kersh actively: initiated proceedings in Oakland County (Michigan) Circuit Court on March 11, 1988 by filing a Motion to Set Aside Order Denying Appellant's Motion to Quash Order Dismissing Appeal and Motion to Disqualify Counsel in *City of Southfield v. Kersh* (No. 84–3024); filed a seventy-eight paragraph complaint against twenty-five defendants in *Kersh v. City of Livonia* (E.D.Mich. No. 88–1871); and recently filed a Motion to Compel Answers to Interrogatories in *Kersh v. Balan* (E.D.Mich. No. 85–1798).

3. Despite being given repeated extensions of time to obtain a new lawyer, Kersh has falsely accused this Court

5. Additional Brief at 6.

6. Additional Brief at 4.

of preventing him from retaining a substitute counsel.

Recent filings by Kersh make even more clear the nature of his misrepresentations to this Court regarding his illness. Although Kersh still maintains that he is too ill for a trial or other extensive legal activity, he also sought an adjournment of the Show Cause hearing on May 31st because:

[P]laintiff alleges that this Court purposely set the May 31, 1988 hearing after determining that plaintiff intended to take depositions of various Judges commencing at 11:00 a.m.[7]

Thus, although too ill for the proceeding before this Court, Kersh is apparently able to undertake the rigorous activity of several depositions which he initiated. His statements of illness appear to be quite disingenuous.

In addition, although Kersh claims to have been ill for an extended period of time, he noticed the depositions of twenty-eight individuals on September 11, 1987 in *Kersh v. Entertainment Pub. et al.,*[8] and thirty-six individuals and/or companies on September 22, 1987. Since he is *pro se,* the Court must assume that he will be acting as his own counsel and, of course, doing his own work. The record is quite clear that Kersh deliberately misled this Court when he claimed that his illness precluded him from undertaking extensive legal activity.[9]

Regarding his other efforts to delay trial, this Court notes that three trial dates in the case have been adjourned due to Kersh's actions. Moreover, Kersh has had a habit of inundating the Court with meritless motions immediately before trial in an effort to seek postponement. Thus, after this Court set a November 23, 1987 trial date, he filed Motions to (1) Remand, (2) Clarify Orders, (3) Amend Final Pretrial Order, (4) Delay Trial, (5) Rehear and Amend, (6) Compel Deposition, (7) Obtain Protective Order and Sanctions, (8) Object to Entry of Orders, and (9) Delay Trial (Emergency). The Motions to Amend even sought to add multiple defendants and new claims (such as RICO) even though the case is over six years old. This Court has had to expend a substantial amount of time in examining each issue before concluding that every motion lacked merit. Nonetheless, on the date of trial, Kersh appeared with a lawyer who informed the Court that he might be willing to represent him.[10] The Court gave the attorney time in which to make a decision and, thereafter, adjourned the trial until February 1, 1988.[11]

After this counsel declined to represent his interests in this case, Kersh filed Motions to (1) Delay Trial, (2) Amend Pleadings, and (3) Add Parties. The Court granted the delay on the basis of Kersh's representations of illness. These representations, as discussed *supra,* later were subsequently discovered to be misleading and the delay in trial was vacated. The request to amend was the third one in a relatively short period of time on almost identical grounds.

Finally, a June 6, 1988 trial date was scheduled. Thereafter, Kersh filed a "Motion to Quash Trial Date and to Disqualify the Court." He then filed a "Supplemental" and "Additional" Brief on this subject, as well as a "Motion for Safe Passage." In sum, Kersh has filed thirteen motions close to trial dates. Three of the motions were amendment requests. Four of his motions sought delays. The one motion which successfully obtained a delay in the commencement of the trial was premised on Kersh's misleading representations. Because of Kersh's frivolous filings, this Court has been forced to spend huge resources that could have been used for legitimate claims.

---

7. Motion for Safe Passage at 2.

8. Civil Action No. 86–74652 (E.D.Mich. J. Duggan).

9. Kersh claims that it is improper for this Court to examine any case other than the instant litigation. Yet, on October 30, 1987, he sent a letter to this Court which contained the docket sheet from which the Court obtained the above deposition schedule. Thus, the Court simply relies on matters which *he* has made into issues.

10. The lawyer was Michael Materna.

11. The Court also required the lawyer to file a Report as to the basis of his decision whether to accept the case. The reasons this Court required the Report are discussed at length in earlier Opinions of the Court.

Moreover, his failures to comply with the directives of this Court, which required him to turn over medical documentation to opposing counsel, have made it impossible for Borden to respond to his delay requests. He has also called the Court a liar on more than one occasion. In Paragraph 1 of his "Motion to Quash Trial Date and to Disqualify," he states that this Court "knowingly lied and distorted facts in its order of April 29, 1988" and in Paragraph 5, he states "That this court has, on a regular basis, lied and twisted facts ..." It is unfortunate that Kersh must resort to name calling when he loses. Nonetheless, his name calling is indicative of his approach and attitude toward the judicial system and his adversaries generally. The ridiculousness of some of his statements is shown in his assertions that the Court deliberately interfered with his sleep schedule by setting an 8:30 a.m. hearing, and by his "Motion for Safe Passage" in which he claimed that the Court was planning to have him arrested at the hearing.

### 2. *Kersh's Other Litigation Activities*

The vexatious and uncooperative approach taken to this litigation by Kersh is unfortunately typical of his other prodigious litigation activities. As this Court stated in its May 19, 1988 Order, Kersh has been involved in at least twenty cases in the Eastern District of Michigan since 1977 and forty-two cases in Oakland County Circuit Court since 1973. A list of the cases is included with the Appendix.

Kersh has offered much criticism of these statistics in his Supplemental Brief regarding the disqualification issue. In retrospect, this Court grossly *under estimated* Kersh's litigiousness. In their Response to the Motion to Quash, Borden points out that Kersh has been involved in at least one hundred and seven lawsuits in the Oakland County (Michigan) Circuit Court. Borden's listing of cases is also attached in the Appendix.

Kersh argues that this Court erred when it stated that he "personally filed" forty-two cases in Oakland County Circuit Court.

This Court did not err since it never made that statement. Kersh was "involved in" at least forty-two cases.

In his Supplemental Brief, Kersh attacks the validity of the case compilation by this Court with a compilation of his own. He uses this summary to argue that most of his cases have been successful and, thus, are not frivolous. There are several serious issues, however, regarding his compilation which require discussion. First, his listing actually confirms the accuracy of the listing of cases by this Court in which he has been involved. At least, with regard to the names of cases, his list is accurate. His list is highly questionable though in its description of his supposedly numerous litigation successes.

For example, his summary of case results is unsworn and is not supported by an affidavit.[12]

In addition, there are obvious inconsistencies on the face of his summary. For example, on page five of his Supplemental Brief, he lists the case of *Kersh v. Angelosante* and puts a "+" sign next to it. According to his code, "+" identifies a litigation victory for him. However, in footnote 5, which relates to the *Angelosante* case, he describes the case as having been "Dismissed because Federal Court determined that complaint was filed one or two days after the statute for libel and slander expired." Thus, his own case summary is contradictory. This certainly calls into question the other results within the summary.

Moreover, the summary is quite presumptively biased in that the code never lists any cases as having being lost. There is no code for that important result. This suggests that his assessments of the case are quite skewed. Moreover, on page ten of the Supplemental Brief, he puts the symbol "AV" next to several cases. "AV" is not in his code. Thus, this symbol is without any significance.

Finally, Kersh states in footnote 3 that he "has compiled the list from memory and

---

**12.** Given his prior record of misrepresentations regarding his illness, this Court is unwilling to accept any unsworn statements by Kersh on this issue.

believes it is fully accurate. Many of the cases are too old to be found without exhaustive research." This is ironic because one of the supposedly adverse effects of his illness is bad memory. Indeed, he has conceded he does not remember whether he adjourned a deposition. Given his purported memory problems, his past misrepresentations, his admitted failure to do exhaustive research, the facial contradictions within his summary of cases, and its unsworn nature, this Court cannot give this summary any credence at all.

Thus, to the extent that Kersh is attempting to demonstrate through his case summary that his prior lawsuits are not frivolous, this attempt fails because it is so utterly devoid of credibility.

This Court has been able to determine from the Federal Court records to which it has access that Kersh's harassing litigation style has not been limited to this case alone. In *Kersh v. Entertainment Publications,*[13] he sued over forty defendants in a RICO type action, including the Honorable Avern Cohn. In September 1987, he noticed over fifty depositions in the case. Moreover, in early 1987, he served deposition subpoenas on the Honorable Robert E. DeMascio, his law clerk, Tony LaCerava, the Honorable Barbara Hackett, her court clerk, Sara Fischer, and Magistrate Virginia Morgan. Judge DeMascio had referred one of Kersh's injunction motions in another case to Magistrate Morgan. Her recommendation against him was adopted by Judge Hackett, to whom the matter had been transferred upon her elevation to the federal bench. Because of the adverse rulings, Kersh sought the depositions of these judicial officers. The list of defendants in *Kersh v. Entertainment Publications* is enclosed in the Appendix. Kersh clearly enjoys harassing judicial officers who rule adversely against him. He also enjoys su-

ing or deposing virtually anyone who upsets him, especially judges.

In *Kersh v. Montgomery Ward,*[14] Judge Patrick Duggan addressed a letter to Kersh on November 3, 1987, in which he stated that there is "no justifiable reason why your portion of the Pretrial Statement was not prepared in a form acceptable to the Court." He added that Kersh must copy some documents because:

Certainly the expense that you are causing the Court with these unnecessary hearings, not to mention the expense of defense counsel for unnecessary appearances is greater than the cost that may be involved in copying a few hundred documents.

Judge Duggan denied Kersh's request to recuse himself from the case. Kersh then sought a mandamus which was denied by the Sixth Circuit Court of Appeals on December 28, 1987.

Magistrate Lynn v. Hooe, Jr. ruled against Kersh on an issue in *Kersh v. Sears.*[15] Kersh then sought his recusal. Although the recusal was ultimately denied, Kersh again resorted to inappropriate means of contesting adverse decisions. He has also sought disqualification here and in state court cases.[16]

In addition, his Complaints are often massive collections of defendants such as *Kersh v. Entertainment,*[17] or the seventy-eight paragraph Complaint in *Kersh v. Livonia.*[18] These cases are so convoluted that they take up massive amounts of court time. Kersh then tries to grind the opponent down by repeated motions for reconsideration, amendment, recusal, etc. The docket sheets which he attached to an October 30, 1987 letter to this Court[19] shows the nature of his filings. His litigation activities are clearly bent on harassing opponents and judicial officers who stand in his way.[20]

---

**13.** Civil Action No. 86–74652 (E.D.Mich., Judge Duggan).

**14.** Civil Action No. 86–70478 (E.D.Mich., Judge Duggan).

**15.** Civil Action No. 86–73606 (E.D.Mich.)

**16.** *See* Appendix.

**17.** *Supra.*

**18.** Civil Action No. 88–71871 (Appendix).

**19.** Pleading No. 141.

**20.** Kersh also appears to have enough residual income through his corporate activities to be able to spend time "punishing" his adversaries in such a fashion.

The other unique quality to Kersh's litigation is that after bringing the lawsuit as a plaintiff, he simply fails to prosecute his claim and does everything in his power to bring about delay. As the comments quoted from Judge Duggan suggest, Kersh used his illness as an excuse for not being able to prepare for trial in that case. He also used his supposed illness in this case to delay its progress when he was being very active in other cases.

Most importantly, Kersh spreads himself so thin in his litigation that he is simply unable to fulfill his duty to prosecute his case. This assessment is shared by Kersh who asserted that his other litigation activities precluded his being able to attend hearings in this Court or file necessary responses. Most disturbingly, however, Kersh has continued to file new lawsuits despite not being willing to carry out his obligations in the old lawsuits. Thus, while informing this Court of his inability to do certain things in this case, he filed a massive lawsuit against the City of Livonia (Michigan) in March of 1988. It is this seemingly limitless desire of Kersh to file new lawsuits, sue numerous judges, and harass adversaries, despite not prosecuting older cases on the books, that led this Court to enter its Restraining Order on May 19, 1988. This Court has sought to take measures which would reasonably limit his unquenchable desire to sue anyone and everyone so that he would focus his attention on pending matters.

Kersh has acknowledged he cannot do all that his cases require in an October 30, 1987 letter to this Court.[21] In that letter, he seeks the delay of various proceedings here because:

As further support for my position that I have not been remise in preparing for this trial I am enclosing my Writ of Mandamus and the docket sheets from the five cases I have cited in the Writ. I hope the court recognizes that I have issued in excess of 200 discovery notices in those cases and filed countless other discovery requests and motions in order to bring those cases to trial or settlement.

In addition to the case before this court Mr. Berris removed himself on *Kersh v Balan* and several other cases. Mr. Berris further left me to file and process appeals in several other cases including *Kersh v All Pointes* and *Kersh v Great American Insurance Company.*

I spent until approximately July 9, 1987 compiling a 90 page brief and a 900 page joint appendix for *Liberty v Metro* in the Court of Appeals. I appeared before that Court on October 1, 1987 and argued my appeal. I was required to file a brief on appeal in the State Court on *Kersh v Witulski;* I filed a brief on appeal, ex-parte motion and other documents in *City of Southfield v Kersh.* I have at least 25 motions to answer and three appeals to file.

I was required to file motions and a brief on appeal in a RICO suit I filed in the Texas Federal Court. I have sent out numerous other sets of interrogatories; answered same and appeared for depositions in other cases. I filed notices of appeals in 3 cases relating to Liberty Bank and Trust and recently filed motions to set aside the judgment in those cases for the reason that the dismissals were based upon the original judgment entered by Judge Cohn. That judgment was set aside by the Court of Appeals on October 6, 1987.

I have been required to make up three final pre-trial briefs by Judge Duggan within the last month. I have spent days on end in his court and chambers as a result of is orders. The last day being October 20, 1987 when I was ordered by said judge to compile a list of trial exhibits from documents containing formaldehyde gas. As a result of my exposure to those documents I became violently ill that morning. Your court would not recess my hearing. I could not adequately

---

**21.** Kersh's letter alleges that this Court removed his lawyer from the case without notice. Nothing could be further from the truth. He had ample time to actively object and did so. It also states that the Court interfered with his surgery. However, it should be noted that Kersh scheduled the elective surgery on a date which would purposefully interfere with a court hearing. His comments about being too sick are belied by his legal activity.

represent myself at that hearing because of my illness. I left your court and went directly to my doctor (letter attached). I have been too sick since that date to work.

The drain on the court system of Kersh's activities is massive. The instant cause involved over six years of intensive litigiousness. It involved hundreds of hours of court time, and thousands of dollars of lawyer time. Yet, after utilizing all of these resources, Kersh has simply abandoned his claim by failing to prosecute it. In the interim, numerous other plaintiffs, who are eager to go to trial, have been deprived of their opportunity to be heard. Another one of Kersh's cases, *Kersh v. Shy,*[22] was also recently dismissed by Judge Duggan.

Kersh has objected to the reliance by this Court on information from other cases as indicating some sort of extrajudicial activity. However, it is Kersh who has made these activities an issue in this case by seeking adjournments and delays, most of which were premised on his need to attend to other judicial activities. His October 30, 1987 letter demonstrates such an approach. Moreover, he sought to adjourn the Order to Show Cause hearing on May 31st because of depositions in other cases. Since he has made these other cases relevant to this case, the Court, as the manager of its docket, has the inherent authority to verify his activities. Moreover, with regard to the fact that the Court is aware of some of his state court activities, it may, of course, take "judicial notice" of these materials.[23]

In summary, this Court finds that Kersh has used the judicial system to harass adversaries and judicial officers. The end result of these activities is a massive drain on the judicial system generally. Kersh has used his numerous lawsuits to play off against each other in an effort to avoid prosecuting them. In the ten years that this Judge has been sitting on the federal bench, there has never been a litigant who has so improperly used the litigation process as has Kersh.

## CONCLUSIONS OF LAW

The Sixth Circuit Court of Appeals has endorsed the use of certain kinds of injunctions by trial courts to curb the activities of prolific litigators in *Filipas v. Lemons.*[24] All of the other circuits, which have addressed the issue have also expressed approval for such actions in certain situations.[25]

There appear to be two principle sources of authority for courts to enjoin prolific and vexatious litigants. The case of *In re Martin–Trigona*[26] has held that courts have certain inherent powers:

Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions. If such power did not exist, or if its exercise were somehow dependent upon the actions of another branch of government or upon the entitlement of a private party to injunctive relief, the independence and constitutional role of Article III courts would be endangered.

Other courts have invoked the "All Writs Act," 28 U.S.C. § 1651, as justification.[27]

---

**22.** Civil Action No. 85–71260.

**23.** Thus, if Kersh represents himself as being too ill for legal activity here and the Court is sent information showing he has engaged in state court activity at the same time, the Court may take judicial notice of it.

**24.** 835 F.2d 1145, 1146 (6th Cir.1987) (per curiam).

**25.** *See Gordon v. Department of Justice,* 558 F.2d 618 (1st Cir.1977); *In re Martin–Trigona,* 737 F.2d 1254 (2d Cir.1984), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1985); *Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir. 1972); *Day v. Allstate Ins. Co.,* 788 F.2d 1110

(5th Cir.1986); *Green v. Warden,* 699 F.2d 364 (7th Cir.1983), *cert. denied,* 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *Green v. White,* 616 F.2d 1054, 1056 (8th Cir.1980) (per curiam); *Franklin v. Murphy,* 745 F.2d 1221, 1232 (9th Cir.1984); *Cotner v. Hopkins,* 795 F.2d 900 (10th Cir.1986); *Procup v. Strickland,* 792 F.2d 1069 (11th Cir.1986); *In re Green,* 669 F.2d 779 (D.C.Cir.1981) (per curiam).

**26.** 737 F.2d at 1261.

**27.** *See e.g. Rudnicki v. McCormack,* 210 F.Supp. 905, 908 (D.R.I.1962).

The Restraining Order, to which reference has been made, discussed some of the unique qualities of injunctions against frivolous litigants:

> *Martin* also holds that (1) the traditional standards of injunctive relief need not be satisfied regarding a vexatious litigant and (2) the Court need not depend upon a private party to initiate the injunction request:

> Moreover, the traditional standards for injunctive relief, i.e., irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant. Where the jurisdiction of the federal courts is in need of protection, we need not await the arrival of a litigant able to show a private entitlement to relief. Indeed, in cases such as the instant one, private parties and their counsel (who may have to notify an insurance carrier of actions against them no matter how frivolous) may well decide that the course of wisdom is not to seek injunctive relief, which may only generate new harassing actions, but to hope the malicious litigant finds new quarry. A history of litigation entailing "vexation, harassment and needless expense to [other parties]" and "an unnecessary burden on the courts and their supporting personnel" is enough. *Matter of Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983).

The Circuit Court for the District of Columbia has held that:

> Courts in this and other circuits have been required to respond to prolific *pro se* litigants with "determination and imagination." *In re Green*, 669 F.2d at 786.[28]

■ This Court is aware that litigiousness alone will not support an injunction against a plaintiff.[29] Moreover, the Court is also aware that any injunction must be closely tailored to the vice so as not to infringe upon the litigator's right to court access.[30]

In *Safir v. United States Lines, Inc.*,[31] the Court of Appeals for the Second Circuit adopted the following multi-factor test for determining whether or not to restrict a litigant's future access to the courts:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?, (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

The Court will adopt and apply this test in determining whether a permanent injunction should be granted. An additional unique factor also deserves consideration. This factor is the apparent inability and unwillingness of the Kersh to keep up with his Court obligations because he is so overexhausted.

As discussed in detail in the "Findings of Fact," this litigant has a history of filing vexatious and harassing litigation. With regard to duplicity, after exhausting all appeal avenues with a judge and being denied mandamus, he often sues the judge or the court where the judge sits, or both. His Complaint in *Kersh v. Livonia* demonstrates this. In the Affidavit which Kersh attaches to his "Supplemental Brief" regarding disqualification of this Court in the instant matter, he admits that:

> The lawsuit entitled *Kersh v. Livonia* was not a case requiring any research by

---

**28.** *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985).

**29.** *Pavilonis v. King*, 626 F.2d 1075 (1st Cir.), *cert. denied*, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed. 2d 34 (1980).

**30.** *Sires v. Gabriel*, 748 F.2d 49, 51 (1st Cir. 1984).

**31.** 792 F.2d 19, 24 (2d Cir.1986).

the plaintiff. Its pleadings are similar to an earlier suit drafted by an attorney hired by plaintiff several years ago as well as a Writ of Superintending control previously drafted by a legal assistant employed by plaintiff.[32]

Thus, the duplicity of some of Kersh's litigation is quite evident from the above admission. The first prong of *Safir* has been satisfied.

It is doubtlessly true that Kersh is involved in the running of several businesses and, as such, he can be expected to be involved in some litigation. Moreover, he used to be represented by lawyers. However, with the passage of time and as he has sued more judges, Kersh has (by his own admission) had greater difficulty retaining counsel. Thus, it is within the last few years that most of his suits have been *pro se*. This is the third prong of *Safir*. It is during this recent period that his approach to this litigation as well as other cases, has shown clear evidence of bad faith as demonstrated in the "Findings of Fact." This is the second prong of *Safir*. The unnecessary burden to the judiciary which has been caused by Kersh's activities is also evident from the Findings of Fact. In this case alone, six years of litigation took place for nothing.

Finally, the Court does not believe that any other sanctions would suffice. First, the other sanctions will likely only create further litigation by Kersh, in the form of appeals or suits against this Court. It is the necessity of curbing this frivolous approach to litigation (e.g., suing numerous state court judges in *Kersh v. Livonia*) that must be remedied. Second, the Court has no intention of barring further lawsuits by Kersh. It simply wants to minimize the possibility that he will abuse the judicial system by the filing of frivolous or harassing lawsuits. Third, other sanctions used by the Courts have not worked.

Two other points bear mention. First, by his own admission, Kersh has filed more lawsuits than he can keep up with. This is one of the unique aspects of this case which argues in favor of injunctive relief. The Court must control his litigation propensity because he cannot control it himself. As a consequence, Kersh simply fails to meet his procedural obligations in many lawsuits. Before he can file new lawsuits, he must meet his obligations in the older proceedings.

Second, it is true that Kersh has not filed as many lawsuits as some vexatious litigators.[33] Yet, he has also been involved in more lawsuits than some who have been enjoined.[34] Nonetheless, the real necessity of enjoining Kersh is not just the number of suits that he has filed—but the manner in which he handles the litigation once filed. His activities clearly merit an injunction. The *Martin* Court set forth reasoning which applies equally to this cause:

> The district court in the present case thus had the power and the obligation to protect the public and the efficient administration of justice from Martin–Trigona's litigious propensities. Injunctive relief was fully appropriate, since other sanctions would not be effective. Assessment of costs and legal fees against this appellant might be fruitless ... and even countereffective in that they would lead to yet further protracted litigation.

This Court cannot ignore the fact that Kersh did not (1) appear at the May 31, 1988 hearing or (2) file any formal objection to the entry of this injunction. Therefore, Kersh has waived any opposition to the entry of this injunction, assuming that it is within certain reasonable grounds.[35] It is well accepted that an unverified pleading in opposition to an injunction request is inadequate where the injunction is supported by documentation, or affidavits.[36]

**32.** Affidavit at 5.

**33.** *See e.g. Martin Trigona, supra* (hundreds); *In re Green, supra* (hundreds).

**34.** *See e.g. Gordon, supra* (series of complaints filled with vituperative attacks on judges).

**35.** *See Sparrow v. Reynolds,* 646 F.Supp. 834, 840 (D.D.C.1986). *Cf. Sampson v. Murray,* 415 U.S. 61, 89 n. 63, 94 S.Ct. 937, 952 n. 63, 39 L.Ed.2d 166 (1973).

**36.** *See* Wright and Miller, *Federal Practice and Procedure,* § 2949 at 469.

■ As to form, the Restraining Order provides a useful starting point although some modifications must be made. The court in *Urban* [37] required the litigant to certify that his claim (1) had never been raised or disposed of by a court, (2) was not frivolous, and (3) had not been made in bad faith. These are useful additions which will be incorporated. Under these circumstances, the litigant can be subject to contempt if his certification proves to be untrue. Moreover, in *Rudnicki v. McCormack,* [38] the court required the plaintiff to satisfy the court that "his action presents at least a prima facie case." The Court will also incorporate this requirement by analogizing to the standards for *sua sponte* dismissal of *in forma pauperis* proceedings under 28 U.S.C. § 1915(d).

Finally, the prior Restraining Order of this Court had barred the filing of any federal suit without leave of this Court. This Court also indicated that it would determine if state court filings should be enjoined as well. A close reading of *Martin* reveals that a federal court cannot require a party to obtain its leave for all state court filings. However, the court did allow the federal court to enjoin Martin from bringing new actions "in *any* tribunal" (including state courts) against federal court personnel. Moreover, at least two federal courts have approved broad injunctions against litigants which bar them from suing state or federal judges, or their employees in *any* court without obtaining leave of the court. [39] Thus, the Court will refashion its injunction to require Kersh to obtain leave of this Court for state court suits where those suits are aimed at state or federal judges, their employees, agents, or interns, and court personnel. He need not seek leave for other state suits. Finally, the Court will require Kersh to list all of his pending cases when he seeks leave to file a new case. By this measure, the Court will be able to determine whether: (1) there is any duplicative litigation and (2) he will be able to carry out his duty to prosecute a claim. Moreover, this permanent injunction shall supersede the Re-straining Order which was entered by this Court on May 19, 1988. The Court takes these measures in the interest of justice and the preservation of a well functioning judicial system.

Accordingly, this Court enters the following Permanent Injunction which shall take immediate effect upon entry of this Order:

1. Plaintiff, David A. Kersh, is precluded and restrained from filing any new actions in the United States District Court for the Eastern District of Michigan without obtaining leave of this Court. He is also precluded and restrained from filing any new actions in any court whatsoever (state or federal) against any state or federal judge, officer or employee, or court employee, for actions taken in the course of their official duties as a judge, officer, employee, or court employee. This required action by Kersh shall be deemed to be a condition precedent to the commencement of any legal action by him. Failure by Kersh to seek leave of this Court shall permit the Court wherein the case is filed to dismiss the case.

2. In order to obtain leave, Kersh must comply with the following requirements:

(a) He must file a "Motion Pursuant to Court Order Seeking Leave to File" with any proposed Complaint.

(b) As an exhibit to that motion, he must attach a declaration which has been prepared pursuant to 28 U.S.C. § 1746 or a sworn affidavit certifying that (1) his claim is a new issue which has never been previously raised by him in any court, (2) the claim is not frivolous, (3) the claim is not made in bad faith, and (4) he pledges to fulfill his obligations under *Fed.R.Civ.P.* 41(b) to diligently prosecute the case.

(c) By means of a second exhibit, he must identify and list: (1) the full caption of each and every suit which has been previously filed by him or on his behalf in any court against each and every defendant in the suit that he wishes to file, and (2) the full caption of each and every suit which he has currently pending.

---

**37.** *Supra.*

**38.** 219 F.Supp. at 911.

**39.** *Gordon, supra; Rudnicki, supra.*

(d) As a third exhibit to that motion, he must provide a copy of each Complaint covered by (c)(1) above and a certified record of its disposition. He must serve a copy of this order on each defendant if and when leave to serve is granted. Failure to comply with, and or satisfy, the terms of this Order may be a sufficient ground for this Court to deny any motion for leave to file made by Kersh or to sustain a motion to dismiss such a lawsuit.

(3) Kersh shall append this Order to any new action that he may hereinafter file in any court.

(4) Nothing in this Order shall be construed as having any effect on Kersh's ability to defend himself in any criminal action which has been or may be brought against him or to file a petition for writ of habeas corpus.

(5) The Court shall retain the ability to modify this injunction as necessary where circumstances may change.

IT IS SO ORDERED.

## APPENDIX

### FEDERAL COURT CASES

| | |
|---|---|
| Kersh v. Sackett | No. 75–71602 |
| Kersh v. West | No. 77–70103 |
| Kersh v. U.S. Postal Service | No. 79–73153 |
| Kersh v. Southland Corp. | No. 81–72445 |
| Burger King v. Kersh | No. 81–73347 |
| Kersh v. Angelosante | No. 82–71079 |
| Kersh v. Burger King | No. 82–72400 |
| Kersh v. American Telephone and Telegraph | No. 82–73327 |
| Kersh v. Borden Chemical | No. 82–74444 |
| Liberty State Bank & Trust v. Metro Passbook | No. 82–74881 |
| Metro Passbook v. T.A.S. Graphic Comm. | No. 83–74252 |
| Kersh v. Overnight Transportation | No. 84–73362 |
| Kersh v. Paperfold Bindaries | No. 84–75470 |
| Kersh v. Shy | No. 85–71260 |
| Kersh v. Township of Southfield, Michigan | No. 85–71322 |
| Kersh v. Galan | No. 85–71798 |
| Kersh v. UPS | No. 86–70105 |
| Kersh v. City of Southfield, Michigan | No. 86–70471 |
| Kersh v. Montgomery Ward | No. 86–70478 |
| Kersh v. American Heart of Michigan, Inc. | No. 86–72055 |
| Kersh v. Entertainment Publications, et al | No. 86–74652 |
| Kersh v. Webb Graphics, et al | No. 87–71607 |

### OAKLAND COUNTY CIRCUIT COURT CASES

| | |
|---|---|
| Weil v. Metro Passbook, Inc. | No. 71–082116–CX |
| Kersh v. Overseas National Airways | No. 74–109271–CK |
| Kersh v. Robert A. Mazur | No. 74–114198–CK |
| Buddy's Rendezvous Pizzeria v. Metro Club, Inc. | No. 74–115897–CZ |
| Kersh v. Safeco Insurance Co. | No. 75–122763–CK |
| Kersh v. Procter & Gamble Co. | No. 75–124682–CP |
| Kersh v. Robert McGee | No. 75–126798–CK |
| Metro Club, Inc. v. Michigan Bell Telephone | No. 75–127044–CK |
| Kersh v. Joseph Grossman | No. 75–127459–CB |
| Metro Club, Inc. v. Hilton Hotels Corp. | No. 75–131272–CK |
| Kersh v. Kersh | No. 76–140062–DO |
| Myerson Corp. v. Metro Club, Inc. | No. 76–140353–CK |
| Kersh v. Michael J. Hickmott | No. 76–144301–CK |
| Metro Club, Inc. v. Gerald Myerson | No. 78–174630–CK |
| Kersh v. Ernest Esperti | No. 79–183169–NO |
| C. Jasin Heating v. Kersh | No. 80–DA2101–AV |
| Kersh v. Stephen S. Malerman | No. 80–2115–CZ |
| Kersh v. Ernest Esperti | No. 82–DA2504–AV |
| Kersh v. Frederick Ziem | No. 81–234124–AS |
| C. Jasin Heating Co. v. Kersh | No. 82–DA2563–AV |
| Norman Shy v. Metro Passbook, Inc. | No. 82–241351–CH |
| Kersh v. Walter Hartford | No. 83–DA2619–AV |
| Kersh v. Liberty State Bank & Trust | No. 83–256248–CZ |
| MTR Marketing Corp. v. Kersh | No. 88–265664–CZ |
| All Pointes Construction Co. v. Kersh | No. 83–267970–CZ |
| Kersh v. Ramco Gershenson, Inc. | No. 83–269426–CH |
| Southfield City v. Kersh | No. 84–DA3024–AV |
| C. Jason Heating Co. v. Kersh | No. 84–DA3025–AV |
| Kersh v. Fred James Co. | No. 84–281469–CK |
| Carolyn Shy v. Kersh | No. 85–DA3300–AV |
| Kersh v. None | No. 85–292162–AS |
| Carolyn Shy v. Kersh | No. 85–294958–CK |
| Michigan National Bank v. Maple House, Inc. | No. 85–299703–CK |
| All Pointes Construction v. Kersh | No. 86–DA3597–AV |
| Kersh v. Savin Corp. | No. 88–346633–CK |
| Perfect Bonding Corp. v. Kersh | No. 84–DA2940–AV |
| Kersh v. Joseph A. Carson | No. 73–102601–CX |
| People v. Kersh | No. 74–DA0893–AR |
| Kersh v. Michigan National Bank | No. 74–108556–CH |
| Kersh v. Centennial Insurance Co. | No. 74–112709–CK |
| Kersh v. Packer Pontiac, Inc. | No. 75–121490–CZ |
| Kersh v. Michigan National Bank | No. 75–131038–CB |

Exhibit A.
Kersh's Litigation Activities in Oakland County Circuit Court
(taken from original; seal and notarization omitted)

01 KERSH, DAVID        PD–D   OP–DILLER, RAYMOND        CN–68–045233–XX

| | PD | OP | CN |
|---|---|---|---|
| 02 KERSH, DAVID | PD-D | OP-WEIL, MARTIN J | CN-71-082116-CX |
| 03 KERSH, DAVID | PD-P | OP-OVERSEAS NATIONAL | CN-74-109271-CK |
| 04 KERSH, DAVID | PD-P | OP-MAZUR, ROBERT A | CN-74-114198-CK |
| 05 KERSH, DAVID | PD-D | OP-BUDDYS RENDEZVOUS | CN-74-115897-CZ |
| 06 KERSH, DAVID | PD-P | OP-SAFECO INS CO | CN-75-122763-CK |
| 07 KERSH, DAVID | PD-P | OP-PROCTER & GAMBLE C | CN-75-124682-CP |
| 08 KERSH, DAVID | PD-P | OP-MCGEE, ROBERT | CN-75-126798-CK |
| 09 KERSH, DAVID | PD-P | OP-MICHIGAN BELL TELE | CN-75-127044-CK |
| 10 KERSH, DAVID | PD-P | OP⌐GROSSMAN, JOSEPH | CN-75-127459-CB |
| 11 KERSH, DAVID | PD-P | OP-HILTON HOTELS CORP | CN-75-131272-CK |
| 12 KERSH, DAVID | PD-D | OP-KERSH, DANICA | CN-76-140062-DO |
| 13 KERSH, DAVID | PD-D | OP-MEYERSON CORP | CN-76-140353-CK |
| 14 KERSH, DAVID | PD-P | OP-HICKMOTT, MICHAEL J | CN-76-144301-CK |
| 15 KERSH, DAVID | PD-P | OP-MEYERSON, GERALD | CN-78-174630-CK |
| 16 KERSH, DAVID | PD-P | OP-ESPERTI, ERNEST | CN-79-183169-NO |
| 17 KERSH, DAVID | PD-D | OP-C JASIN HEATING CO | CN-80-DA2101-AV |
| 18 KERSH, DAVID | PD-P | OP-MALERMAN, STEPHEN S | CN-80-211579-CZ |
| 19 KERSH, DAVID | PD-P | OP-ZIEM, FREDERICK | CN-81-234124-AS |
| 20 KERSH, DAVID | PD-P | OP-ESPERTI, ERNEST | CN-82-DA2504-AV |
| 21 KERSH, DAVID | PD-D | OP-C JASIN HEATING CO | CN-82-DA2563-AV |
| 22 KERSH, DAVID | PD-D | OP-SHY, NORMAN | CN-82-241351-CH |
| 01 KERSH, DAVID | PD-P | OP-HARTFORD, WALTER | CN-83-DA2619-AV |
| 02 KERSH, DAVID | PD-P | OP-LIBERTY STATE BANK | CN-83-256248-CZ |
| 03 KERSH, DAVID | PD-D | OP-MTR MARKETING CORP | CN-83-265664-CZ |
| 04 KERSH, DAVID | PD-D | OP-ALL POINTES CONST | CN-83-267970-CZ |
| 05 KERSH, DAVID | PD-P | OP-RAMCO GERSHENSON I | CN-83-269426-CH |
| 06 KERSH, DAVID | PD-D | OP-C JASIN HEATING CO | CN-84-DA3025-AV |
| 07 KERSH, DAVID | PD-D | OP-SOUTHFIELD CITY | CN-84-DA3024-AV |
| 08 KERSH, DAVID | PD-P | OP-FRED JAMES CO | CN-84-281469-CK |
| 09 KERSH, DAVID | PD-D | OP-SHY, CAROLYN J | CN-85-DA3300-AV |
| 10 KERSH, DAVID | PD-P | OP-NONE | CN-85-292162-AS |
| 11 KERSH, DAVID | PD-D | OP-SHY, CAROLYN J | CN-85-294958-CK |
| 12 KERSH, DAVID | PD-D | OP-MICHIGAN NATIONAL | CN-85-299703-CK |
| 13 KERSH, DAVID | PD-D | OP-ALL POINTES CONST | CN-86-DA3597-AV |
| 14 KERSH, DAVID | PD-P | OP-SAVIN CORP | CN-88-346633-CK |
| 15 KERSH, DAVID | PD-D | OP-PERFECT BONDING CO | CN-84-DA2940-AV |
| 16 KERSH, DAVID, A | PD-D | OP-POTIKER, HUGHES L | CN-68-041585-XX |
| 17 KERSH, DAVID, A | PD-P | OP-CARSON, JOSEPH A | CN-73-102601-CX |
| 18 KERSH, DAVID, A | PD-D | OP-PEOPLE | CN-74-DA0893-AR |
| 19 KERSH, DAVID, A | PD-P | OP-MICHIGAN NATIONAL | CN-74-108556-CH |
| 20 KERSH, DAVID, A | PD-P | OP-CENTENNIAL INS CO | CN-74-112709-CK |
| 21 KERSH, DAVID, A | PD-P | OP-PACKER PONTIAC INC | CN-75-121490-CZ |
| 22 KERSH, DAVID, A | PD-P | OP-MICHIGAN NATIONAL | CN-75-131038-CB |
| 01 KERSH, DAVID, A | PD-P | OP-GROSSMAN, NEAL | CN-75-132208-NM |
| 02 KERSH, DAVID, A | PD-D | OP-GROSSMAN, NEAL L | CN-78-TR2527-PZ |
| 03 KERSH, DAVID, A | PD-P | OP-MICHIGAN NATIONAL | CN-79-DA1863-AV |
| 04 KERSH, DAVID, A | PD-D | OP-HANGING TREE INC | CN-80-201494-NZ |
| 05 KERSH, DAVID, A | PD-P | OP-STEIN, MICHAEL L | CN-80-205774-NM |
| 06 KERSH, DAVID, A | PD-P | OP-FORD MOTOR CO | CN-80-213228-NZ |
| 07 KERSH, DAVID, A | PD-P | OP-BANK OF THE COMMON | CN-81-219962-NZ |
| 08 KERSH, DAVID, A | PD-P | OP-RATNER, LAWRENCE W | CN-81-227160-NM |
| 09 KERSH, DAVID, A | PD-P | OP-CRUM, JAMES | CN-81-231879-NM |
| 10 KERSH, DAVID, A | PD-P | OP-LITTLE, GEORGE | CN-81-234125-AS |
| 11 KERSH, DAVID, A | PD-P | OP-CRUM, JAMES H | CN-82-239138-NM |
| 12 KERSH, DAVID, A | PD-P | OP-BORDEN CHEMICAL | CN-82-248965-NP |
| 13 KERSH, DAVID, A | PD-D | OP-LIBERTY STATE BANK | CN-83-256744-CK |
| 14 KERSH, DAVID, A | PD-D | OP-PERFECT BONDING CO | CN-84-DA2940-AV |
| 15 KERSH, DAVID, A | PD-D | OP-ROCK, J ROBERT | CN-86-315176-CK |
| 01 METRO MONEYSAVER | PD-P | OP-RAMCO GERSHENSON I | CN-83-269426-CH |
| 02 METRO MONEYSAVER INC | PD-D | OP-C JASIN HEATING CO | CN-84-DA3025-AV |
| 03 METRO MORTGAGE SERV CO | PD-D | OP-HARRIS, RICHARD | CN-85-300950-CH |
| 04 METRO MORTGAGE SERVICING CO | PD-D | OP-YANCY, RAMONA | CN-86-309898-CP |
| 05 METRO MOVING & STORAGE CO | PD-D | OP-WESTLAND INDUSTRIA | CN-83-269894-CZ |
| 06 METRO MOVING & STORAGE INC | PD-P | OP-AMERICAN RED BALL | CN-83-267282-CK |
| 07 METRO MOVING & STORAGE INC | PD-D | OP-FORD MOTOR CORP | CN-85-292113-CK |
| 08 METRO MOVING & STORAGE INC | PD-P | OP-MICHIGAN BELL TELE | CN-87-338189-CZ |
| 01 METRO PASSBOOK CORP | PD-P | OP-POTIKER, HUGHES L | CN-67-039423-XX |
| 02 METRO PASSBOOK CORP | PD-P | OP-WALBY, CHARLES A | CN-68-050061-CX |
| 03 METRO PASSBOOK CORP | PD-D | OP-KING BEEF OF MICHI | CN-69-057476-XX |
| 04 METRO PASSBOOK CORP | PD-P | OP-STERN, GEROLD | CN-69-058480-XX |
| 05 METRO PASSBOOK CORP | PD-D | OP-SPORTS UNLIMITED I | CN-69-058552-XX |
| 06 METRO PASSBOOK CORP | PD-P | OP-SPORTS UNLIMITED I | CN-70-071284-XX |
| 07 METRO PASSBOOK CORP | PD-D | OP-ALBANY CONST CO | CN-71-DA0364-AV |
| 08 METRO PASSBOOK CORP | PD-D | OP-WEIL, MARTIN J | CN-71-DA2116-CX |
| 09 METRO PASSBOOK CORP | PD-D | OP-METRO PASSBOOK COR | CN-72-091992-XX |
| 10 METRO PASSBOOK CORP | PD-P | OP-METRO PASSBOOK COR | CN-72-091992-XX |

| | | | | |
|---|---|---|---|---|
| 11 | METRO PASSBOOK CORP | PD–P | OP–NIB FOODS INC | CN–73–101032–CX |
| 12 | METRO PASSBOOK CORP | PD–D | OP–KRASS, ALLEN M | CN–74–113620–CZ |
| 13 | METRO PASSBOOK CORP | PD–D | OP–BUDDYS RENDEZVOUS | CN–74–115897–CZ |
| 14 | METRO PASSBOOK INC | PD–D | OP–KERSH, DAVID A | CN–75–131038–CD |
| 15 | METRO PASSBOOK INC | PD–P | OP–HILTON HOTELS CORP | CN–75–131272–CK |
| 16 | METRO PASSBOOK INC | PD–P | OP–WALBY, CHARLES A | CN–76–140705–CK |
| 17 | METRO PASSBOOK INC | PD–P | OP–GREAT AMERICAN INS | CN–81–224378–CK |
| 18 | METRO PASSBOOK INC | PD–P | OP–ELLIOT TOURS INC | CN–82–236230–CK |
| 19 | METRO PASSBOOK INC | PD–D | OP–SHY, NORMAN | CN–82–241351–CH |
| 20 | METRO PASSBOOK INC | PD–D | OP–KERSH, DAVID | CN–83–256248–CZ |
| 21 | METRO PASSBOOK INC | PD–D | OP–LIBERTY STATE BANK | CN–83–256744–CK |
| 22 | METRO PASSBOOK INC | PD–D | OP–C JASIN HEATING CO | CN–84–DA3025–AV |
| 01 | METRO PASSBOOK INC | PD–D | OP–ROCK, J ROBERT | CN–86–315176–CK |
| 02 | METRO PASSBOOK INTERNATIONAL | PD–D | OP–GATEWAY PRESS INC | CN–74–109830–CK |
| 03 | METRO PASSBOOK INTERNATIONAL | PD–D | OP–NORTH PARK TOWERS | CN–79–183565–CZ |
| 04 | METRO PASSBOOK INTERNATIONAL | PD–P | OP–DICTRAN INTERNATIO | CN–79–191995–CK |
| 05 | METRO PASSBOOK INTERNATIONAL | PD–D | OP–HANGING TREE INC | CN–80–201404–NZ |
| 06 | METRO PASSBOOK INTERNATIONAL | PD–D | OP–SCHNEIDER, DOROTHY | CN–83–255952–AE |
| 07 | METRO PASSBOOK INTERNATIONAL | PD–D | OP–BAKER INVESTMENT L | CN–84–DA3125–AV |
| 08 | METRO PASSBOOK INTERNATIONAL | PD–D | OP–PERFECT BONDING CO | CN–84–DA2940–AV |
| 09 | METRO PASSBOOK LTD | PD–D | OP–HANGING TREE INC | CN–80–201404–NZ |
| 10 | METRO PASSBOOK LTD | PD–P | OP–LUMBERMANS MUTUAL | CN–84–282703–CK |
| 11 | METRO PASSBOOK LTD | PD–D | OP–ROCK, J ROBERT | CN–86–315176–CK |
| 01 | METROPOLITAN CLUB OF AMERICA | PD–D | OP–MCCOWAN, MICHAEL | CN–81–225491–NO |
| 02 | METROPOLITAN CLUB OF ROYAL OAK | | | |
| 03 | METROPOLITAN CLAY PRODUCTS CO | PD–D | OP–WIETHOFF, DONNA | CN–81–233112–CZ |
| 04 | METROPOLITAN CLAY PRODUCTS CO | PD–P | OP–FLEMING, KANSAS | CN–63–004155–XX |
| 05 | METROPOLITAN CLUB SPIRIT NO 6 | PD–P | OP–KIMMICH, IMMANUEL | CN–68–049068–XX |
| 06 | METRO CLUB INC | PD–P | OP–ZORN, EDWIN H | CN–63–004062–XX |
| 07 | METRO CLUB INC | PD–D | OP–MARTINI, ADAM | CN–74–108405–CD |
| 08 | METRO CLUB INC | PD–P | OP–EMPRESS GARDENS | CN–74–110354–CK |
| 09 | METRO CLUB INC | PD–D | OP–BUDDYS RENDEZVOUS | CN–74–115897–CZ |
| 10 | METRO CLUB INC | PD–P | OP–SPORTS UNLIMITED I | CN–74–117475–CZ |
| 11 | METRO CLUB INC | PD–P | OP–MICHIGAN BELL TELE | CN–75–127044–CK |
| 12 | METRO CLUB INC | PD–P | OP–HILTON HOTELS CORP | CN–75–131272–CK |
| 13 | METRO CLUB INC | PD–P | OP–GROSSMAN, NEAL | CN–75–132208–NM |
| 14 | METRO CLUB INC | PD–D | OP–MEYERSON CORP | CN–76–140353–CK |
| 15 | METRO CLUB INC | PD–P | OP–WALBY, CHARLES A | CN–76–140705–CK |
| 16 | METRO CLUB INC | PD–P | OP–PAPATHEODORIE, ANTH | CN–77–149899–CK |
| 17 | METRO CLUB INC | PD–P | OP–LAM, KING C | CN–77–149901–CK |
| 18 | METRO CLUB INC | PD–P | OP–ALPINE VALLEY SKI | CN–77–149903–CK |
| 19 | METRO CLUB INC | PD–P | OP–GAWRON, CAMIMIR C | CN–77–156978–CK |
| 20 | METRO CLUB INC | PD–P | OP–MEYERSON CORP | CN–78–167476–CK |
| 21 | METRO CLUB INC | PD–P | OP–MEYERSON, GERALD | CN–78–174630–CK |
| 01 | METRO CLUB INC | PD–P | OP–SOMERSET PROPERTIE | CN–78–177350–CK |
| 02 | METRO CLUB INC | PD–P | OP–SOMERSET PROPERTIE | CN–78–179639–CK |
| 03 | METRO CLUB INC | PD–P | OP–BAGEL NOSH OF MICH | CN–78–180749–CK |
| 04 | METRO CLUB INC | PD–P | OP–KOULOUBERIS, SPYRID | CN–79–193495–CK |
| 05 | METRO CLUB INC | PD–D | OP–HANGING TREE INC | CN–80–201404–NZ |
| 06 | METRO CLUB INC | PD–P | OP–ROBERTS, JANE E | CN–80–204631–CK |
| 07 | METRO CLUB INC | PD–P | OP–DIMOPOULOS, GEORGE | CN–80–204632–CK |
| 08 | METRO CLUB INC | PD–P | OP–LOPEZ, EDUARDO | CN–80–204633–CK |
| 09 | METRO CLUB INC | PD–P | OP–GLASSER LEZELL & R | CN–80–209070–CK |
| 10 | METRO CLUB INC | PD–P | OP–DETROITBANK CORP | CN–81–228094–CZ |
| 11 | METRO CLUB INC | PD–P | OP–CRUM, JAMES H | CN–82–239138–NM |
| 12 | METRO CLUB INC | PD–D | OP–MTR MARKETING CORP | CN–83–265664–CZ |
| 13 | METRO CLUB INC | PD–D | OP–ROCK, J ROBERT | CN–86–315176–CK |
| | | PD–D | OP–KRASS, ALLEN M. | CN–74–113620–CZ |

**1456**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

CIVIL ACTION NO. 86–CV–74652–DT

HONORABLE PATRICK DUGGAN

David KERSH, Plaintiff,

v

ENTERTAINMENT PUBLICATIONS INC., Amoco Oil Co., Sears Roebuck & Co., J.C. Penney Inc., Hughes Potiker, Sheila Potiker, Jori Potiker, Jori Potiker, Jack Robinson, Perry Drug Stores Inc., Frank Zinn, B'Nai Brith Womens Organization, Liberty State Bank and Trust, A Michigan Banking Association, Robert Hertzberg, Avern Cohn, Hertzberg & Golden, P.C., Colin, Campbell, Charles Christmas, David Breck, Frederick Hoops, Hoops and Hoops, P.C. a/k/a Hoops, Field & Droulinger PC, Reese Lenheiser, The Board of Directors of Liberty State Bank, Fred Kania, Will Chard, Keith Mallott, Anthony Rosati, Merrill, Tatham and Rosati P.C., Norman Tremonti, Olympia Arenas Inc., Detroit Red Wings, Inc., FCI International, Inc., FCI International II, Inc., Norman Shy, Carolyn Shy, Richard Maddin, J. Laevin Weiner, Maddin Weiner, Wartell, Hauser and Roth, P.C., Larry Angelosante, The Board of Directors of Tas Graphic Communications Inc., Charles Farmer, Tas Graphic Communications, Inc., Macomb Mall, Jack Schenkman dba Livonia Mall, Montgomery Wards, Inc., The Evening News Association, Inc., Ford Motor Company, Inc., FERA FERA (Ford Employees Recreation Association), United Parcel Service, Inc., Gold C Enterprises, Inc., The Center Companies Inc., General Motors Corporation, General Motors Mens Club, Michigan Bell Telephone Company, Fred Morganroth, Jerry Meyerson, Gray Printing Company, Gateway Press, Inc., Robert Templin & James Thorburn, Buddy's Rendevous Pizza, Inc., Alfred Krawitz and Richard Natow, Jointly and Severally, Defendants.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

David KERSH, Plaintiffs,

v

CITY OF LIVONIA, City of Southfield, Wayne County Circuit Court, 36th District Court, 35th Judicial Court, 44th Judicial Court, 52nd Judicial Court, 48th Judicial Court, 45B Judicial Court, Court of Appeals, Oakland County Circuit Court, Susan Moiseev, Norman Lippitt, State of Michigan, Richard Cyrul, Donna Beaudett, Richard Austin, 16th Judicial Court, Robert Brzezinski, Joseph Mysliwiec, Patricia Eisenhardt, State Court Administrator, 46th Judicial Court, Winnie Krieger, Webster Buehl, Allen Abbey & Paul Bertram, Michigan Department of Labor, Elizebeth Howe, Michigan Employment Security Commission, Doris Stuart, Michael Carolyn, Oakland County and Frank Kohl Jointly and Severally Defendants.

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

STATE OF MICHIGAN

19TH JUDICIAL COURT

CASE NO. GC 028649

Judge Ferrara

David KERSH, Plaintiff,

v

OVERNIGHT TRANSPORTATION CORPORATION, Defendant.

MOTION TO DISQUALIFY JUDGE FERRARA

Now comes the plaintiff and states his motion under MCR 2.003(B) as follows:

1) That a hearing on plaintiff's motions was heard on March 31, 1988.

2) That the hearing, as the record will established, consisted of the court continually changing its mind and the

court, inspite of the fact that the plaintiff and Judge Ferrara have never met before, acting in an extremely emotional manner without explanation.

3) That the plaintiff felt during most of the hearing that he had injected himself in some sort of family argument with the court.

4) That after the conclusion of the hearing Judge Ferrara held a conversation with the plaintiff and explained that her emotional behavior at the

---

STATE OF MICHIGAN

WAYNE COUNTY CIRCUIT COURT

CASE NOS. 87–LO 43090T, 87–714828, 85–422723 PS, GC 028649

CITY OF LIVONIA

vs

David KERSH.

Delano WALKER

vs

David KERSH

David KERSH

vs

MICHIGAN BELL TELEPHONE COMPANY

David KERSH

vs

OVERNIGHT TRANSPORTATION WRIT OF SUPERINTENDING CONTROL

Now comes David Kersh and states his motion as follows:

1) That in the causes of action listed above the 16th, 19th and the 36th Judicial Court have deprived Kersh of his due process rights as described in the brief to be attached.

2) That in the case of City of Livonia v. Kersh the plaintiff has been wrongfully jailed; had illegal license suspensions and bench warrants issued for his arrest and further must stand trial on a ticket issued