William A. ORTMAN, Plaintiff,

v.

Philip THOMAS, John Van Bolt, Michigan National Corporation, Robert Mylod, David Vigna, Douglas Bernstein, Comerica Bank, Lynn Allen, Gerald Poisson, Donald Slavin, John Ronayne, III, Chester E. Kasiborski, Jr., Kasiborski, Ronayne and Flaska, Michigan Attorney Discipline Board, Michigan Attorney Grievance Commission, George E. Bushnell, Jr., David Breck, Frederick Harris, Anna Diggs Taylor, Allan Falk, John Doe(s), individually, jointly and severally, Defendants.

Civ. A. No. 94–75046.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 31, 1995.

William L. Woodard, U.S. Attorney, Detroit, MI, for Defendant U.S.

Maryann F. Connolly, Barry H. Somlyo, Earl R. Jacobs, Jacobs, James, Klarr & Somlyo, Southfield, MI, for Defendant Frederick Harris.

Mary M. Ross, Plunkett & Cooney, P.C., Detroit, MI, for Defendant David Breck.

Margaret A. Nelson, Michigan Department of Attorney General, Tort Defense Division, Lansing, MI, for Defendant George E. Bushnell, Jr.

Jane Shallal, Attorney Grievance Commission, Detroit, MI, for Defendant Michigan Attorney Grievance Commission.

Kurt M. Carlson, Michael D. Boutell, Comerica, Inc., Legal Department, Detroit, MI, for Defendant Comerica Bank.

David J. Vigna, Douglas C. Bernstein, Michigan National Corporation, Legal Department, Farmington Hills, MI, for Defendant Douglas Bernstein.

John J. Ronayne, III, Kasiborski, Ronayne & Flaska, Detroit, MI, for Defendant Kasiborski Ronayne & Flaska.

Scott E. Hawkins, Solana Beach, CA, William A. Ortman, Farmington, MI, for Plaintiff William A. Ortman.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

GADOLA, District Judge.

Before this court are several motions filed by the defendants in this action for sanctions

under Federal Rule of Civil Procedure 11 against the plaintiff, William J. Ortman. The defendants have brought these motions seeking awards of attorney fees incurred in this litigation and a permanent injunction prohibiting Ortman from filing any future civil lawsuits based upon or arising out of any of the legal or factual claims asserted in this action. These sanctions motions follow this court's disposition of the last of three lawsuits filed by Ortman in connection with a 1978 action against Michigan National Corporation. That original action was eventually resolved in 1990 with a dismissal of Ortman's claims and an award of $26,000 in sanctions against Ortman for frivolous and vexatious litigation. The remaining actions were resolved by this court in its August 7, 1995 order dismissing Ortman's complaint against the twenty-two defendants ultimately brought into that action. To give some perspective as to the propriety of an award for sanctions in this case, a review of the history of this epic litigation is warranted.

## I. Factual Background

On September 26, 1978, Ortman, a licensed attorney, filed an action *in pro per* in Michigan's 47th District Court against Petre D. and Georgetta Maria Teodorescu, the parents of one of Ortman's former clients. The Teodorescus' had issued a check to Ortman, drawn on their account at Michigan National Bank, in the sum of $1,500.00, as partial payment for services rendered on their son's behalf. Before the check was presented for payment, the Teodorescus requested that Michigan National Bank stop payment, which it did, pursuant to its obligation under the Uniform Commercial Code. Based on these facts, Ortman claimed damages from Michigan National Bank, for allegedly conspiring with the Teodorescus to deprive him of his fee. *Ortman v. Teodorescu,* et al., Case # 78–02–5300 CZ, 47th District Court ("Original Action").

After service of the Complaint, Michigan National Bank was one day late in filing its answer and a default judgment was immediately entered by the Honorable Michael J. Hand in the 47th District Court on October 19, 1978 not for the amount of the check but for the full amount of Ortman's claimed fee.

Michigan National appealed the entry of judgment and on September 18, 1979, Oakland County Circuit Judge Robert B. Webster reversed and remanded the matter for a hearing to determine whether or not the bank had shown good cause to set aside the default.

On remand, Judge Hand refused to set aside the default and Michigan National appealed again to the Oakland County Circuit Court. While the appeal was pending, Ortman obtained a second default judgment against Michigan National on November 2, 1979, based on its alleged failure to file a garnishee disclosure form. On July 1, 1980, Judge Webster set aside the first default judgment and instructed that the matter be set for trial. Nearly four years later, on June 8, 1984, Michigan National filed its motion for summary judgment. Approximately three years later, on April 20, 1987, Judge Hand found that there were unresolved questions of fact, and ordered the matter to be set for trial "at the earliest available date." No trial date was ever scheduled during the remainder of Judge Hand's tenure on the bench.

Before his retirement from the 47th District Court bench, Judge Hand signed a Writ of Execution in favor of Ortman, on April 24, 1989, premised upon the second default judgment. Pursuant to this writ, a court officer appeared at a Michigan National bank branch in Farmington on July 14, 1989, threatening to seize computers and other office equipment unless Ortman's "judgment", now claimed to be approximately $25,-000.00, was paid. Counsel for Michigan National promptly informed the court officer that the judgment upon which the writ had been issued was void and that the writ had obviously been issued by mistake.

When these facts were brought to his attention, incoming Judge Frederick L. Harris ordered an expedited hearing on the Bank's claim the writ of execution was improperly issued. Judge Harris granted Michigan National's motion to set aside the writ on July 18, 1989 and set the matter for trial on October 3, 1989. The Court allowed 30 days for discovery, as Ortman had previously refused to submit to depositions which were

scheduled for January 8, 1979 and June 14, 1984. Ortman, however, refused to appear at a deposition scheduled on Monday, August 21, 1989.

On September 12, 1989, Michigan National Bank brought its Motion to Dismiss, pursuant to MCR 2.313(B)(2)(c) based upon Ortman's refusal to agree to submit to a deposition. At this hearing, Ortman again refused to submit to deposition. Consequently, Judge Harris dismissed Ortman's case with prejudice by order dated October 3, 1989. Ortman appealed the entry of the dismissal and, on July 11, 1990, the Oakland County Circuit Court affirmed the dismissal of the action and remanded the case to the trial court to determine whether costs and attorney fees should be awarded.

While the appeal from the trial court's dismissal was pending, Ortman filed a separate action in Oakland County Circuit Court seeking to renew the second default judgment. *Ortman v. Michigan National Bank,* Case # 89–379432–CZ ("second action"). Ortman claimed damages of $25,264.01 (the amount of the second default judgment $6,959.76, plus 10 years of interest). This second action was assigned to Judge Breck.

On July 11, 1990, Judge Breck granted Michigan National Bank's motion for summary disposition. Ortman appealed, and on March 30, 1993, the Michigan Court of Appeals affirmed and remanded the case for a determination of the appropriate sanctions, in the form of costs and attorney fees, because Ortman's conduct was "vexatious and calculated to do nothing more than harass and intimidate the defendants." *Ortman v. Michigan National Corp.,* No. 133075 (Mich. App. March 30, 1993) (slip opinion).

Because Michigan National's original attorneys, David Vigna and Douglas Bernstein were potential witnesses on the issue of costs and fees incurred, Michigan National Bank retained attorney John Ronayne, III, to represent it in the sanctions hearing before Judge Breck. After a hearing at which Ortman did not appear, Judge Breck sanctioned

plaintiff and awarded costs and attorney fees to Michigan National in the amount of $26,539.26.[1]

On December 21, 1994, Michigan National successfully recovered $1,412 from plaintiff's bank account at Comerica Bank through service of a writ of garnishment by Oakland County Court Clerk, Lynn Allen. Because it turned over the garnished funds to Michigan National, Comerica was named as a defendant in this suit based upon allegations brought under 42 U.S.C. § 1983 that it violated Ortman's constitutional rights under color of state law. Allen and two of her employees, Gerald Poisson and Donald Slavin were also named as defendants to this action.

Based upon Ortman's refusal to disgorge funds in escrow to them, the Teodorescus filed a complaint with the Michigan Attorney Grievance Commission. The Commission, sua sponte, added allegations of misconduct concerning vexatious litigation after investigation into the original and second actions. Philip Thomas, administrator of the Commission, filed two complaints against Ortman with the Michigan Attorney Discipline Board in July, 1993. The Board, which is the adjudicatory arm of the Michigan Supreme Court responsible for determining discipline complaints brought against Michigan attorneys, ordered as a sanction, disbarment. Ortman named the Commission and the Board, as well as Philip Thomas, John VanBolt, and George Bushnell, Jr. for their involvement with the Commission and the Board, as defendants in his most recent § 1983 action.

In a 1991 lawsuit brought before the Honorable Anna Diggs Taylor of the Eastern District of Michigan, Ortman asserted numerous civil rights claims against nearly sixty defendants, including three Michigan counties, two cities, several law firms, all of the Justices of the Michigan Supreme Court, two Oakland County Circuit Court judges, and two Oakland Probate Court judges, based, inter alia, upon an alleged conspiracy to deprive Ortman of a trial by jury. *Ortman v. Michigan,* No. 91–74299 (E.D.Mich.

1. Based on allegations that he had not received notice of the sanctions hearing, Ortman filed a request for investigation with the Michigan Attorney Grievance Commission against Mr. Ronayne

on June 6, 1994. On August 4, 1994, the Attorney Grievance Commission found that further investigation was not warranted as there was no misconduct.

1991). Judge Taylor granted summary judgment against Ortman and awarded Rule 11 sanctions of $40,000 in attorney fees and costs to all defendants. In an unpublished opinion issued in 1993, the United States Court of Appeals for the Sixth Circuit affirmed the dismissal of Ortman's complaint and sanctions imposed by Judge Taylor, who was named as a defendant in the instant case. *Ortman v. Michigan*, No. 92–2177, 16 F.3d 1220, 1994 WL 12230, at *3, 1994 U.S.App. LEXIS 969, at *11 (6th Cir. Jan. 18, 1994).

Ortman filed his most recent complaint, consisting of four counts against twenty-two defendants, with this court on March 15, 1995. Count I requested a declaration that the Michigan system for the discipline of attorneys unconstitutionally denied Ortman of due process and equal protection of law. Count II alleged a conspiracy by Michigan National employees and/or attorneys during the original and second actions to set aside a valid judgment and to institute disciplinary proceedings against Ortman as punishment for his attempts to expose public corruption, namely, the Bank's illegal actions in setting aside the judgments against it. Count II claimed also that Michigan National received assistance in its efforts by ineptitude or actual conspiracy by members of the Attorney Grievance Commission and members of the Michigan judiciary from the district court to the Michigan Supreme Court. Count III challenged various aspects of Michigan National's enforcement of Judge Breck's 1994 sanctions order, alleging that Michigan National made false and fraudulent certifications on the application for writ of garnishment, and that the Oakland County Court

Clerk failed to detect the fraud, resulting in Comerica Bank's wrongful honor of the writ of garnishment. Michigan National allegedly also received assistance from an Oakland County officer and various members of the Oakland County Corporation Counsel and the Attorney Grievance Commission. Count IV alleged a conspiracy by certain attorneys, judges, and the Attorney Grievance Commission to deprive Ortman of his property. It recites an incident where plaintiff was allegedly falsely arrested and imprisoned by federal marshals acting at the direction of United States District Judge Anna Diggs Taylor during one of the hearings before the Attorney Discipline Board.

In a published opinion issued on August 8, 1995, this court granted each of the defendant's motions to dismiss or for summary judgment. *Ortman v. Thomas et al.*, 894 F.Supp. 1104 (E.D.Mich.1995). This court concluded that a large portion of Ortman's complaint was "utterly frivolous and without merit" and that much of this complaint was "filed with the intent to harass and punish various perceived enemies and opposing litigants." This court declined to rule on motions filed by several defendants for Rule 11 sanctions and scheduled a hearing on that issue for October 19, 1995.[2] Based upon the various submissions of the defendants and the arguments presented at the hearing, this court has made the following findings.

## II. Standard for Sanctions Under FRCP 11

■ Federal Rule of Civil Procedure 11 imposes an affirmative duty upon any individual who signs a pleading, motion or other paper filed in federal court to conduct a

---

**2.** The defendants have filed three separate motions requesting Rule 11 sanctions in the form of attorney fees and cost, and seeking permanent injunctive relief. Defendants Michigan National Corporation, Robert Mylod, David Vigna and Douglas Bernstein filed a motion and brief on May 18, 1995, in which defendants John J. Ronayne, III, Chester E. Kasiborski, Jr., Kasiborski, Ronayne & Flaska, Lynn Allen, Gerald Poisson, Donald Slavin, Judge David Breck, Comerica Bank, and Judge Frederick Harris joined. Defendants Michigan Attorney Discipline Board, John VanBolt and George E. Bushnell filed a separate motion on July 27, 1995 requesting costs and reasonable attorney fees. Defendant

Allan Falk also filed a separate motion on June 5, 1995 seeking Rule 11 sanctions and/or costs pursuant to 28 U.S.C. §§ 1919 and 1927 as well as permanent injunctive relief.

Ortman has responded only to the motion filed by Michigan National. Given the similarity of relief requested, this court will treat the defendants' individual motions as though they were filed collectively, unless justice demands the granting of additional relief requested by individual defendants. It will also treat the defenses raised by Mr. Ortman in his response dated May 30, 1995, as applicable to all of the defendants' motions.

reasonable inquiry into the issues presented in that filing to assure that the document is well grounded in fact, the positions taken are warranted by existing law or as good faith arguments for the extension or modification of existing law, and the document is not filed for an improper purpose, such as harassment. Fed.R.Civ.P. 11; *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor,* 875 F.2d 1224, 1229 (6th Cir.1989).[3] To determine whether Rule 11 has been violated, the court must assess whether the individual's conduct was objectively reasonable under the circumstances. *Business Guides v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 554, 111 S.Ct. 922, 935, 112 L.Ed.2d 1140 (1991); *Mann v. G & G Mfg., Inc.,* 900 F.2d 953, 958 (6th Cir.1990).

▮▮ Sanctions pursuant to Rule 11 serve the dual purpose of deterring frivolous lawsuits and compensating those parties forced to defend such suits. The case law interpreting and the amendments to Rule 11 make clear that the primary purpose of the Rule is to deter baseless filings and curb abuses of the judicial system, not to reward parties who are victimized by litigation. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). The Rule also provides that any sanctions imposed should be no more severe than is necessary to deter these abuses. *See* Fed.R.Civ.P. 11(c)(2); *Jackson,* 875 F.2d at 1229; *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). In fashioning an appropriate sanction, the court may consider past conduct of the individual responsible for violating Rule 11. *Kramer v. Tribe,* 156 F.R.D. 96, 104 (D.N.J.1994).

▮▮ Rule 11 gives the court wide discretion in selecting an appropriate remedy, including the authority to issue directives of a nonmonetary nature. Fed.R.Civ.P. 11(c)(2). This discretion is not unlimited, however. Before issuing a monetary sanction, the court must make some inquiry into the individual's ability to pay such a sanction, even where the offended party's actual expenses and cost appear reasonable. *Jackson,* 875 F.2d at 1230. The burden to present probative evidence of financial status or of an inability to pay sanctions rests, however, upon the individual being sanctioned. *Gaskell v. Weir,* 10 F.3d 626, 629 (9th Cir.1993); *In re Kunstler,* 914 F.2d 505, 524 (4th Cir.1990). Absent such evidence, the court should nonetheless avoid imposing a monetary sanction that will have the effect of bankrupting the offender or of driving him from the practice of law. *In re Kunstler,* 914 F.2d at 524.

▮▮ In determining whether to impose a sanction restricting a litigant's future access to the courts, courts in the Eastern District have adopted a five-factor test which considers:

(1) The litigant's history of litigation and in particular whether it entails vexatious, harassing or duplicative lawsuits;

(2) The litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?

(3) Whether the litigant is represented by counsel.

(4) Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

(5) Whether other sanctions would be adequate to protect the courts and the other

---

**3.** Rule 11 provides in relevant part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary or, if specifically so identified, are likely to have evidentiary support after reasonable opportunity for further investigation or discovery.

parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Kersh v. Borden Chemical,* 689 F.Supp. 1442, 1450 (E.D.Mich.1988) (adopting the standard applied in *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986)). Where the history of vexatious litigation is particularly odious, the traditional standards for injunctive relief do not apply and the court may impose injunctive sanctions without a request by an offended party. *Id.* at 1450 (citing *Matter of Hartford Textile Corp.,* 681 F.2d 895, 897 (2d Cir.1982)). Moreover, courts in the Eastern District have recognized that injunctive sanctions may be appropriate, even where the litigant has not been involved in multiple actions, where that litigation has been unusually protracted or burdensome, and the losing party simply refuses to bound by the outcome. *Michigan v. City of Allen Park,* 573 F.Supp. 1481, 1487 (E.D.Mich.1983). The injunction must, however, be sufficiently tailored to the vice so as not to infringe upon the litigator's right of access to the courts. *Kersh,* 689 F.Supp. at 1450.

### III. Discussion

■ It is clear from the previous holdings of this court and other courts in this and other action involving Ortman, that this court has the authority under Rule 11 to impose sanctions. As this court's August 7, 1995 Memorandum Opinion and Order plainly concluded, Ortman's "Verified Amended Complaint" filed on March 15, 1995, is exactly the type of pleading the Rule 11 was intended to deter. After reviewing the entire history of this litigation and the nature of the claims raised by Ortman, this court concluded unequivocally that Ortman's complaint was "utterly frivolous and without merit" and "filed with the intent to harass and punish various perceived enemies and opposing litigants." *Ortman v. Thomas,* 894 F.Supp. 1104 (E.D.Mich.1995).

In his latest submission to this court on October 19, 1995, Ortman further demonstrates the necessity of sanctions in this case. Ortman's "reply" brief contains the same baseless and vindictive vituperations typical of the prior pleadings he has filed with this court in this matter. This court is not convinced by the exhortations of Ortman's counsel that Ortman is "getting more sensible." To the contrary, Ortman's prolific record in pursuit of this litigation clearly demonstrates that Ortman has neither sense of contrition nor an ounce of self-control in this case. The pattern of vexatious litigation displayed by Ortman over the seventeen years of this litigation and its most recent manifestation in his October 19, 1995 "reply" brief confirm this court's conclusion that Ortman's intent in filing this action was to harass and punish the named defendants. This pattern also demonstrates that more stringent sanctions are warranted to prevent Ortman from pursuing this pernicious litigation further.

This conclusion is bolstered by an abundance of recent case law in the Eastern and Western Districts of Michigan involving factual situations eerily similar to this matter.[4] An excellent example is *Kersh v. Borden Chemical,* 689 F.Supp. 1442 (E.D.Mich.1988), where the court enjoined the plaintiff from filing any new actions in the United States District Court without leave of the court and from filing any actions whatsoever against any state or federal judge, officer or employee, for actions taken in their official capacities. In its discussion of the plaintiff's history of vexatious and harassing litigation, the court noted:

> With regard to duplicity, after exhausting all appeal avenues with a judge and being denied mandamus, he often sues the judge or the court where the judge sits, or both.

*Kersh,* 689 F.Supp. at 1450. Similarly, in *Nabkey v. Hoffius,* 827 F.Supp. 450, 456–57 (W.D.Mich.1993), the court found the plaintiff in contempt and permanently enjoined her from filing papers in the United States District Court until the filing passed the scrutiny of a United States Magistrate Judge that

---

4. The fact that there are any of these types of cases argues even more persuasively for a rigor-

ous application of Rule 11.

it is free of vexatious and frivolous allegations. This sanction was based on the plaintiff's blatant disregard for judicial authority:

> Miss Nabkey's disdain for judicial authority is evidenced first by the fact that this action has at one time or another involved claims against no less than six judges. During the course of this case's tortured history, she has accused them, among others, not simply of erroneously making decisions adverse or injurious of her rights, but in language scandalous and vexatious, or orchestrating a "cold-blooded," "Machiavellian conspiracy," an "enterprise of terror."

> \*     \*     \*     \*     \*     \*

> Further, ... her disdain for judicial authority has contributed mightily and needlessly to the multiplication and protraction of proceedings. Nearly every adverse ruling has been followed by a motion for reconsideration, then by a motion to set aside, and then often by an appeal to the Sixth Circuit Court of Appeals. None of these machinations has ever merited relief; they have served merely to prolong the case.

A third example is *Mark v. Unknown U.S. Agents,* 1992 U.S.Dist. LEXIS 17537 (E.D.Mich.1992), where the court ordered Rule 11 sanctions and imposed a permanent injunction based on its conclusion that the pleadings contained "nonsensical claims." The court expanded:

> Each pleading filed by the plaintiffs becomes more sensational and less intelligible in their ever broadening allegations of government corruption. I cannot begin to understand the claims being asserted by the plaintiffs in this matter.

Examination of excerpts from the court orders dismissing some of Ortman's prior suits reveals the striking similarities between this case and *Kersh, Nabkey* and *Mark,* and further demonstrates the propriety of injunctive and monetary sanctions. In affirming the dismissal of Ortman's action to renew his garnishment default judgment against Michigan National in the second action, the Michigan Court of Appeals arrived at the following conclusion:

> Plaintiff is an attorney who cannot be said to have not understood that these proceedings were engaged without justification. It should have been clear to him that proceedings in the district court, circuit court and this Court were vexatious and calculated to do nothing more than harass and intimidate the defendants.

*Ortman v. Michigan National Corp.,* No. 133075 (Mich.App. March 30, 1993) (slip opinion). On remand, the Oakland County Circuit Court entered sanctions against Ortman in the amount of $26,539.26.

Despite this, Ortman persisted in his pernicious campaign of harassment and intimidation by filing an action in the Eastern District of Michigan against 56 defendants. In an unpublished opinion, the United States Court of Appeals affirmed the dismissal of this "new" complaint and the imposition of $40,000 in Rule 11 sanctions, noting that:

> It is difficult to discern from plaintiff's brief the arguments against the Rule 11 sanctions. The brief is a collection of accusations and bizarre tales against Michigan's entire court system, its Constitution, various judges and attorneys, entire law firms, and several individuals. These accusations cover a broad scope and include such crimes as bribery, extortion, false arrest, false imprisonment, neglect, death threats, racketeering, fraud, judicial corruption, false imprisonment, illegal search and seizure, the "buying" of judges, judicial retaliations, harassment by police, and a wide-ranging conspiracy against plaintiffs.

*Ortman v. Michigan,* No. 92–2177, 16 F.3d 1220, 1994 WL 12230, at \*3, 1994 U.S.App. LEXIS 969, at \*11 (6th Cir. Jan. 18, 1994).[5]

---

5. Perhaps the most persuasive arguments for the imposition of sanctions in this case come from Ortman himself. The court takes notice of a very small sampling of the claims asserted in Ortman's March 15, 1995 Verified Amended Complaint:

> All Defendants embarked on a conspiratorial plan to harass Plaintiff and intentionally and/or negligently inflict emotional distress and to persecute Plaintiff for insisting upon his legal rights in a permissible way to collect his legal award.

The filing of Ortman's March 15, 1995 Verified Amended Complaint clearly demonstrates that Ortman has not been deterred by sanctions.

## IV. Conclusions

As the preceding discussion demonstrates, the imposition of monetary and injunctive sanctions pursuant to Rule 11 is warranted in this case. This litigation, which began in 1978 as a dispute over the non-payment of a check for $1,500, has escalated into a contemptible and baseless crusade to expose corruption and conspiracy at all levels of the state and federal government. Consistent with the multi-factor test adopted in *Kersh* and the policies underlying Rule 11, this court is convinced that the prior holdings of this and other courts clearly justify the imposition of permanent injunctive relief. The court finds that an injunction prohibiting Ortman from filing any civil lawsuit based upon the factual or legal claims arising in this action or the actions underlying it is sufficiently tailored to the vice identified in this matter, and that it will not infringe upon Ortman's right to court access. *See Kersh*, 689 F.Supp. at 1450.

The court is satisfied that monetary sanctions in the form of reasonable attorney fees are also warranted as to those defendants who testified to or submitted evidence of such fees.[6] Accordingly, this court will award monetary sanctions in the amount of $24,809.99, representing the total amount of reasonable attorney fees and costs claimed by the defendants.

## ORDER

Therefore, it is hereby **ORDERED** that the plaintiff, William A. Ortman, is permanently enjoined from filing any civil lawsuit alleging or asserting factual or legal claims based upon or arising out of any of the legal or factual claims alleged in this action or any of the actions underlying it.

**IT IS FURTHER ORDERED** that plaintiff, William A. Ortman, pay a monetary sanction in the amount of $24,809.99, representing the total amount of reasonable attorney fees and costs incurred by the defendants in connection with the defense of this action. The payments shall be made in the following manner: $14,000 to defendants Michigan National Corporation, Robert Mylod, David Vigna and Douglas Bernstein; $2,500 to defendants Michigan Attorney Discipline Board, John VanBolt and George E. Bushnell; $2,500 to defendant Frederick Harris; $2,500 to defendants Lynn Allen, Gerald Poisson, Donald Slavin and David Breck; and $3,309.99 to defendant Allan Falk.

**SO ORDERED.**

---

Defendants are guilty of fraud, deceit, abuse of process, malicious prosecution and deprivation of rights secured to Plaintiff under the Constitution.

Disciplinary proceedings in Michigan are a mob procedure before a kangaroo court.

The Michigan Attorney Discipline Board and Attorney Grievance Commission appear to be patterned upon masonic or other secret societies and are terroristic.

6. At the sanctions hearing conducted on October 19, 1995, several defendants presented estimates of the attorney fees and costs incurred in connection with Ortman's Verified Amended Complaint. Defendants Michigan National Corporation, Robert Mylod, David Vigna and Douglas Bernstein requested fees and costs in the amount of $14,000. Defendants Lynn Allen, Gerald Poisson, Donald Slavin, and David Breck requested $2,500. Defendants Michigan Attorney Discipline Board, John VanBolt and George E. Bushnell represented that $2,500 would cover all fees and costs incurred. Defendant Frederick Harris also requested fees and costs in the amount of $2,500. Defendant Allan Falk submitted an affidavit prior to the hearing estimating his total fees and costs to equal $3,309.99. The total of all claimed fees and expenses is $24,809.99.