However, the All Writs Act only authorizes the issuance of writs "in aid of . . . jurisdiction[]." 28 U.S.C. § 1651(a). We have held that federal courts must have an independent basis for subject matter jurisdiction in order to issue a writ in aid of such jurisdiction. *See Michigan v. City of Allen Park*, 954 F.2d 1201, 1216 (6th Cir. 1992); *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir.), *cert. denied*, 484 U.S. 828 (1987). Even if we located the district court's authority to impose the injunction in some inherent power, such power is restricted to the aid of federal jurisdiction. *See Villar*, 990 F.2d at 1498-99; Wright & Miller, *supra*, § 4405. And this court has stated that even if the Anti-Injunction Act does not apply, "the power of a district court to enjoin a litigant from proceeding in a state action . . . should be exercised sparingly." *Silcox*, 687 F.2d at 850. Because the district court did not have subject matter jurisdiction over the Tropfs' claims and did not adjudicate them on the merits, the court should not have enjoined the Tropfs from filing any civil lawsuit in the state courts or in state administrative proceedings without posting a bond or cash. The state courts have the full power to decide how to handle any further litigation in state court involving this protracted matter.

### III.  CONCLUSION

We **AFFIRM** the district court's dismissal of the Tropfs' claims for lack of subject matter jurisdiction based on the *Rooker-Feldman* abstention doctrine, and we **AFFIRM** the district court's imposition of monetary sanctions and an injunctive sanction related to the federal courts. We **REVERSE** the district court's order indirectly enjoining the Tropfs' state court action against Holzman and its imposition of an injunctive sanction affecting further proceedings by the Tropfs in the state courts and state administrative bodies, and we **REMAND** for proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0169P (6th Cir.)
File Name: 02a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

KARL F. TROPF; CATHERINE TROPF (00-1368/1699; 01-1550),
     *Plaintiffs-Appellants,*

ARTHUR LEE MORMAN (01-1550),
     *Appellant,*

   v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Texas Corporation; FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California Corporation; MIDWEST GUARANTY BANK, a Michigan Corporation; 20th CENTURY FINANCIAL CORPORATION; JORG BIEREKOVEN; FRANK BIEREKOVEN; LYNNE WOLENSKI; MARY JANE DIAMOND; RAYMOND BISCHOFF; CHICAGO TITLE

Nos. 00-1368/ 1699; 01-1550

1

INSURANCE COMPANY, a
Missouri Corporation; ATLAS
APPRAISAL COMPANY;
THOMAS GAMMON; FIDELITY
NATIONAL TITLE INSURANCE
COMPANY OF NEW YORK;
ANDRZEJ ZAJAC; KIMBERLY
ZAJAC,
            *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 99-72915; 99-76069 —Bernard A. Friedman, District
Judge.

Argued:  November 2, 2001

Decided and Filed:  May 10, 2002

Before:  KEITH, BOGGS, and MOORE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Arthur L. Morman, Detroit, Michigan, William
S. Lewis, Detroit, Michigan, for Appellants.  Mark H. Fink,
MADDIN, HAUSER, WARTELL, ROTH, HELLER &
PESSES, Southfield, Michigan, John Sharp, STROBL,
CUNNINGHAM, CARETTI & SHARP, Bloomfield Hills,
Michigan, for Appellees.  **ON BRIEF:**  Arthur L. Morman,
Detroit, Michigan, for Appellants.  Mark H. Fink, Michael S.
Leib, MADDIN, HAUSER, WARTELL, ROTH, HELLER &
PESSES, Southfield, Michigan, John Sharp, STROBL,
CUNNINGHAM, CARETTI & SHARP, Bloomfield Hills,
Michigan, for Appellees.

Act.[21]  We conclude, therefore, that the district court abused
its discretion in its April 25, 2001 order indirectly enjoining
pending state court proceedings.

We also conclude that the district court's April 5, 2000
injunction requiring the Tropfs to post a $50,000 bond or cash
before filing a civil lawsuit in any state court or state
administrative proceeding was an abuse of discretion as it
applies to future filings of the Tropfs.  Where a district court
dismisses a case for lack of jurisdiction, it does not have the
authority, either inherently or under the All Writs Act, to
enjoin actions by the parties in the state courts or state
administrative proceedings.  As noted above, the Supreme
Court has held that the Anti-Injunction Act only prohibits
*pending* state court proceedings, and we have held that the
Act does not prohibit injunctions against state administrative
proceedings.  *American Motor Sales Corp. v. Runke*, 708 F.2d
202, 204 (6th Cir. 1983) (state administrative proceedings).
Therefore, the district court did not violate the Anti-Injunction
Act in enjoining the Tropfs from filing *future* civil lawsuits in
the state courts or state administrative proceedings.

_____

[21]There are three statutory exceptions to the Anti-Injunction Act: a
federal court may issue an injunction against a pending state court
proceeding "as expressly authorized by Act of Congress, or where
necessary in aid of its jurisdiction, or to protect or effectuate its
judgments." 28 U.S.C. § 2283; *see also Mitchum v. Foster*, 407 U.S. 225,
233-38 (1972) (discussing the exceptions).  But none apply in this case.
First, there is no statute that particularly authorizes the federal courts to
issue injunctions in the circumstances of this case.  Second, the injunction
could not have been issued in aid of the district court's jurisdiction
because the district court lacked jurisdiction over the Tropfs' claims.
Finally, the last exception, commonly referred to as the "relitigation
exception," "was designed to permit a federal court to prevent litigation
of an issue that previously was presented to and decided by the federal
court.  It is founded in the well recognized concepts of *res judicata* and
collateral estoppel." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147
(1988); *see also Hatcher v. Avis Rent-A-Car Sys., Inc.*, 152 F.3d 540, 543
(6th Cir. 1998).  Because the district court abstained on *Rooker-Feldman*
grounds, the injunction cannot have been issued to prevent the state courts
from litigating issues decided in federal court.

*dismissed*, 442 U.S. 925 (1979). The Supreme Court has held that "proceedings" for the purposes of the Act include "all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Hill v. Martin*, 296 U.S. 393, 403 (1935).

In this case, the district court's injunction as written does not directly or indirectly enjoin *pending* state proceedings; the injunction requires only that the Tropfs post a bond before filing civil lawsuits in state court or state administrative proceedings. However, as discussed above, while their federal action was pending, the Tropfs filed another claim in state court on February 29, 2000 against Holzman, and they amended the complaint on January 8, 2001. Pursuant to the sanctions order issued on April 5, 2000, the U.S. district court issued an "order of contempt and enjoining and/or dismissing state court proceeding" on April 25, 2001. In the April 25, 2001 order, the district court found that the Tropfs had failed to post a $50,000 bond or cash before filing their amended complaint in the state court against Holzman, and the court held that if the Tropfs and their attorney failed to post the bond or cash within a day, they would be required "immediately [to] file an Order dismissing the State Court proceeding."[20] In addition, the district court held that if the Tropfs and their attorney did not comply with the April 25, 2001 order, they would be held in criminal contempt of the court. Inasmuch as the April 25, 2001 order indirectly enjoins a state court proceeding commenced after the institution of the federal suit but before the injunction was issued, it squarely violates the prohibitions of the Anti-Injunction

---

[20]Although the district court's April 5, 2000 order only enjoined the Tropfs from filing any civil lawsuit in state court or state administrative proceedings without posting a $50,000 bond or cash, under Federal Rule of Civil Procedure 65(d), injunctions are "binding . . . upon the parties to the action, their officers, agents, servants, employees, and attorneys . . . ."

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Plaintiffs-Appellants Karl E. Tropf and Catherine Tropf ("the Tropfs") appeal the district court's dismissal of their claims and imposition of sanctions. The Tropfs' claims arose out of a complicated set of real estate transactions in Michigan in the 1980s and early 1990s, during which, the Tropfs allege, the Tropfs' house was taken from them by fraudulent conveyance. A number of state court actions ensued, and the Tropfs were denied relief by five separate state courts. Following the denial of relief in the state courts, the Tropfs filed two claims in the United States District Court for the Eastern District of Michigan, consolidated before Judge Friedman, alleging that Defendants-Appellees had illegally conspired to defraud them under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and that Defendants-Appellees had violated their constitutional due process and equal protection rights under 42 U.S.C. § 1983. Defendants-Appellees, the persons who effected the alleged fraudulent conveyance, a number of banks who held mortgages on the property at issue, and the current owners of the property, filed motions to dismiss on the grounds that the district court lacked subject matter jurisdiction over the case under the *Rooker-Feldman* abstention doctrine, that the Tropfs' fraud, RICO, and due process claims were precluded by res judicata, and that the Tropfs failed to state a due process claim under Federal Rule of Civil Procedure 12(b)(6).[1] The district court granted

---

[1]Two sets of defendants-appellees filed briefs in this appeal. The first set consists of Fidelity National Title Insurance Company, a California Corporation, Fidelity National Title Insurance Company of New York, Chicago Title Insurance Company, a Missouri Corporation, and Andrzej and Kimberly Zajac [hereinafter Title Insurance defendants]. The second set consists of Midwest Guaranty Bank and Thomas Gammon

Defendants-Appellees' motions to dismiss on all grounds, and further imposed monetary and injunctive sanctions on the Tropfs and their counsel. For the following reasons, we **AFFIRM** the dismissal of the Tropfs' claims and the imposition of monetary sanctions and an injunctive sanction related to the federal courts, but we **REVERSE** the imposition of an injunctive sanction related to the state courts and state administrative proceedings, and we **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND

In 1986, Karl and Catherine Tropf purchased an unimproved lot in Oakland County, Michigan ("the property"), on which they built a house. The Tropfs mortgaged the property to First National Bank ("FNB") in exchange for a loan in April of 1990; the Tropfs took out a second mortgage with FNB in exchange for additional funds in June of 1992. According to the U.S. district court, the Tropfs defaulted on the loans, FNB foreclosed on the property, and the property was sold at a sheriff's sale on October 18, 1994.[2] The U.S. district court also found that

---

[hereinafter MGB]. Other persons and entities are listed as defendants in this appeal. A Fidelity National Title Insurance Company, a Texas Corporation, is listed as a defendant, but, according to the Title Insurance defendants, there is no such company incorporated in Texas. Title Insurance Defendants' Br. at 24. And 20th Century Financial Corporation, Jorg Bierekoven, Frank Bierekoven, Lynne Wolenski, Mary Jane Diamond, Raymond Bischoff, and Atlas Appraisal Company have not filed briefs or appeared on appeal. We will assume, therefore, that they have adopted by implication the arguments raised by their co-appellees. *See Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 536 n.1 (6th Cir. 2001), *cert. denied*, 70 U.S.L.W. 3639 (U.S. Apr. 15, 2002) (No. 01-1168).

[2]The Tropfs allege that "[t]here has never been a foreclosure or Sheriff's sale of the home." Appellants' Br. at 3. Although we cannot find evidence in the record that the property was foreclosed or that such a sale took place, there is also no evidence in the record to counter the district court's finding of fact.

---

the All Writs Act, codified at 28 U.S.C. § 1651.[19] Commentators have also stated that: "Basic power to protect the preclusive effects of a federal judgment by injunction may well inhere in the very existence of federal courts. If a more definite grant of general authority is needed, it can be found in the All Writs Act. As to any individual case, the grant of subject matter jurisdiction that supported the original judgment continues to provide ancillary jurisdiction for a protective injunction." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4405 (1981) (footnote omitted).

The Anti-Injunction Act, however, codified at 28 U.S.C. § 2283, prohibits a federal court from issuing injunctions "to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Supreme Court has held that this prohibition extends to indirect injunctions against parties. *Atlantic Coast Line Ry. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970) ("It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding."); *see also Silcox v. United Trucking Serv., Inc.*, 687 F.2d 848, 850 (6th Cir. 1982). But the Supreme Court has also held that the Act only prohibits injunctions against *pending* state court proceedings; the Act does not preclude injunctions against the institution of state court proceedings. *Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2 (1965). We have held that the Anti-Injunction Act prohibits federal courts from issuing injunctions against state court proceedings "commenced after the institution of the federal suit but before the . . . injunction was issued." *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 528 (6th Cir. 1978), *cert. granted*, 440 U.S. 944, *cert.*

---

[19]Pursuant to the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions . . . ." 28 U.S.C. § 1651(a).

permission from the district court. J.A. at 897 (Apr. 5, 2000 Order Granting Sanctions). Although the Tropfs do not have a history of vexatious or repetitive litigation in the federal courts, they do have such a history in the state courts regarding this matter. And as the district court found that it did not have subject matter jurisdiction over the Tropfs' claims under the *Rooker-Feldman* doctrine because the claims had been litigated in the state courts, it is likely that any other federal court would also lack subject matter jurisdiction over the legal and factual claims that the Tropfs allege in this case. We therefore conclude that the above injunction does not seem to be more severe than reasonably necessary to prevent the Tropfs from filing further repetitive actions in the federal courts.

The district court also enjoined the Tropfs from filing "any civil lawsuit in any state court or administrative proceeding alleging or asserting a factual or legal claim based upon or arising out of any of the legal or factual claims alleged in these actions" against the federal defendants without first posting a surety bond or cash in the amount of $50,000. J.A. at 897 (Apr. 5, 2000 Order Granting Sanctions). This circuit has not addressed whether a district court can impose prefiling requirements on parties in state courts and state administrative proceedings. The Fifth Circuit, however, has permitted the imposition of injunctive sanctions barring *any* future litigation by the parties on any cause of action arising from the fact situation at issue in the federal district court. *See Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1498-99 (5th Cir. 1993), *cert. denied*, 510 U.S. 1044 (1994); *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980). In *Villar*, the court stated generally that "federal courts have broad powers to protect their judgments and the integrity of the courts as a whole." *Id.* at 1499. In *Harrelson*, the court located its power to issue the injunction against the parties in

Lynne Wolenski, a principal of 20th Century Financial Corporation along with Jorg[3] and Frank Bierekoven, subsequently paid FNB approximately $163,000 to redeem the Tropfs' interest in the property. On March 27, 1995, the Tropfs and Wolenski executed both a warranty deed, in which the Tropfs conveyed the property to Wolenski, and a land contract, in which the Tropfs repurchased the property from Wolenski for $250,000 to be paid in monthly installments of $2,380.81 with an interest rate of eleven percent. The Tropfs allege that both the warranty deed and the land contract were fraudulent.

### *First Action*

On September 5, 1995, Wolenski filed a complaint against the Tropfs in the 52-3 District Court in Michigan for land contract forfeiture.[4] A hearing was held on October 17, 1995 before Judge Shipper, at which the Tropfs were represented by counsel. At the hearing, the Tropfs argued that they had been fraudulently induced to sign the warranty deed and the land contract. The judge, however, granted Wolenski a "judgment of possession after land contract forfeiture" and ordered the Tropfs to pay Wolenski approximately $14,000 arrearage due according to the land contract. The Tropfs appealed to the Oakland County Circuit Court and recorded a notice of lis pendens.[5] On January 22, 1996, the state

---

[3] Jorg Bierekoven is in some documents referred to as Joseph Bierekoven.

[4] The district courts in Michigan have exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000. Mich. Comp. Laws Ann. § 600.8301 (2000).

[5] The Michigan statutory lis pendens provision states: "To render the filing of a complaint constructive notice to a purchaser of any real estate, the plaintiff shall file for record, with the register of deeds of the county in which the lands to be affected by such constructive notice are situated, a notice of the pendency of such action . . . ." Mich. Comp. Laws Ann.

district court issued a writ of restitution of the property to Wolenski, finding that the Tropfs had failed to pay the arrearage as previously ordered. On February 21, 1996, Judge Breck of the state circuit court affirmed the state district court's judgment, and on January 3, 1997, the Michigan Court of Appeals denied the Tropfs' petition for leave to appeal for "lack of merit." J.A. at 360 (Order of Mich. Ct. App.). On April 30, 1997, Judge Breck discharged the lis pendens.

### Second Action

While the appeal in the first action was pending, the Tropfs commenced an action against Wolenski and 20th Century Financial Corporation in the Oakland County Circuit Court in November of 1995, seeking to have the warranty deed and land contract declared an equitable mortgage.[6] According to the U.S. district court, the Tropfs recorded another lis pendens while the second action was pending. After a hearing on May 29, 1996, Judge Nichols, acting for Judge O'Brien, granted the defendants' motion for summary disposition and dismissed the case without prejudice, on the basis that the first action was still being appealed. On April 30, 1997, Judge O'Brien discharged the lis pendens.

### Third Action

On May 4, 1995, Midwest Guarantee Bank ("MGB") loaned Wolenski and her husband, Jorg Bierekoven, $300,000 in exchange for a mortgage on the property. Wolenski and Bierekoven subsequently defaulted on the loan, and MGB brought an action against them to foreclose on the property. Although only the warranty deed had ever been recorded, MGB named the Tropfs as persons who could claim an

---

§ 600.2701(1) (2000).

[6]The circuit courts in Michigan have original jurisdiction to hear and determine all civil claims except as otherwise provided. Mich. Comp. Laws Ann. § 600.605 (2000).

(E.D. Mich. 1995), *aff'd*, 99 F.3d 807 (6th Cir. 1996). Instead of the permanent injunction, we imposed a prefiling requirement, mandating that the plaintiff obtain certification from a magistrate judge that the claims were not frivolous or asserted for an improper purpose before filing further complaints. We held that "[w]e do not believe a person can be absolutely foreclosed from initiating an action in a court of the United States, though it is permissible to require one who has abused the legal process to make a showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed." *Ortman*, 99 F.3d at 811; *see also Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."); *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir. 1987).[18]

In this case, the district court permanently enjoined the Tropfs and their attorney from "filing any civil lawsuit in a United States District Court alleging or asserting factual or legal claims based upon or arising out of any of the legal or factual claims alleged in these actions" without written

---

[18]The Eastern District of Michigan considers five factors in determining whether an injunctive sanction limiting a litigant's future access to the federal courts should be imposed:
1. The litigant's history of litigation and in particular whether it entails vexatious, harassing, or duplicative lawsuits;
2. The litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?
3. Whether the litigant is represented by counsel.
4. Whether the litigant caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
5. Whether other sanctions would be adequate to protect the courts and the other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Ortman*, 906 F. Supp. at 421-22.

their attorney presented factual allegations to the district court that patently lacked evidentiary support. The validity of the land contract and the warranty deed were litigated numerous times in the state courts; for the Tropfs and their attorney to attempt to litigate the issue again in federal court — relying on unsubstantiated legal and factual claims — was unreasonable under the circumstances. We therefore conclude that the district court did not abuse its discretion in imposing monetary sanctions on the Tropfs and their attorney in the amount of the defendants' costs and fees.[17]

**2. Injunctive Sanctions**

Rule 11 also authorizes the imposition of nonmonetary sanctions. Fed. R. Civ. P. 11(c)(2) ("the sanction may consist of, or include, directives of a nonmonetary nature"). The 1993 Advisory Committee Notes to the Rule emphasize that: "[t]he court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." In *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996), we modified a district court's nonmonetary sanction under Rule 11 that had permanently enjoined a plaintiff "from filing any civil lawsuit [in federal court] alleging or asserting factual or legal claims based upon or arising out of the legal or factual claims alleged in this action or any of the actions underlying it." *Ortman v. Thomas*, 906 F. Supp. 416, 424

---

[17]The district court also could have required the Tropfs' attorney personally to pay any excess costs, expenses or attorneys' fees incurred by the defendants because of conduct that "multiplie[d] the proceedings in [the] case unreasonably and vexatiously." 28 U.S.C. § 1927. However, because Rule 11 adequately provides for the attorney costs and fees in this case, we need not address § 1927. *See Ridder v. City of Springfield*, 109 F.3d 288, 297-98 (6th Cir. 1997), *cert. denied*, 522 U.S. 1046 (1998) (imposing monetary sanctions pursuant to § 1927 in case where Rule 11 did not apply).

interest in the property because they had filed a notice of lis pendens in regard to the first action. The third action was heard in Oakland County Circuit Court before Judge Gilbert. Represented by their current counsel, the Tropfs filed a counter-claim alleging that MGB had conspired with Wolenski in violation of the Michigan Truth in Lending Act, the Federal Truth in Lending Act, and RICO. On July 31, 1997, Judge Gilbert ordered the property sold to Andrzej and Kimberly Zajac, defendants in this appeal. The proceeds of the sale were placed in an escrow account pending resolution of the dispute between the Tropfs and Wolenski. On December 17, 1997, Judge Gilbert entered a default judgment for the Tropfs against Wolenski, the Bierekovens, and 20th Century Financial Corporation.[7] However, after the Michigan Court of Appeals denied review of the first action and after a hearing on April 29, 1998, Judge Gilbert granted MGB's motion for summary disposition in an opinion and order on June 22, 1998. Judge Gilbert concluded that "the Tropfs knowingly executed a deed and are held to the consequences of the same." J.A. at 371-72 (Opinion and Order I of June 22, 1998). In a separate opinion and order issued on the same day, Judge Gilbert found that the Tropfs were collaterally estopped by the final judgment in the first action from contesting in the third action Wolenski's title to the property. J.A. at 373-74 (Opinion and Order II of June 22, 1998). Judge Gilbert therefore ordered the proceeds of the sale of the

---

[7]Judge Gilbert entered a default judgment for the Tropfs for $4,024,000.00, finding that the "conveyance is invalid and a nullity because it was procured by fraud and forgery." *See* J.A. at 535-36 (Default J. Dec. 17, 1997); 525-26 (Amended Default J. Dec. 23, 1997). On February 19, 1998, Judge Gilbert amended the amended default judgment; the second amended default judgment does not contain the language regarding fraud and forgery. J.A. at 575-76 (Amended Default J. Feb. 19, 1998).

property disbursed to MGB.[8]   The Tropfs appealed the orders, and on September 11, 2001, the Michigan Court of Appeals affirmed. *Tropf v. State Farm Ins. Co.*, Nos. 213930, 217134, 219994, 227264, 2001 WL 1044875 (Mich. Ct. App. Sept. 11, 2001).[9]

### Fourth Action

In December 1998, the Tropfs brought an action to quiet title in the Oakland County Circuit Court against Andrzej and Kimberly Zajac on the ground that the warranty deed and land contract granting title in the property to Wolenski, and subsequently MGB, were fraudulent. After a hearing on May 5, 1999, Judge Tyner granted the Zajacs' motions for summary disposition and imposed sanctions on the Tropfs' counsel. On September 11, 2001, the Michigan Court of Appeals affirmed the state circuit court's grant of the Zajacs' motions for summary disposition based on collateral estoppel, but the appellate court reversed the circuit court's imposition of sanctions. *Tropf v. State Farm*, 2001 WL 1044875 at *5-6. The court found that "[a]t the time this action was

---

[8]Although Judge Gilbert ruled against the Tropfs, we believe the default judgment is still outstanding. Judge Gilbert did not explicitly vacate the February 19, 1998 default judgment against Wolenski, the Bierekovens, and 20th Century Financial Corporation in her orders of June 22, 1998, and the Michigan Court of Appeals in 2001 discussed the amended default judgment as if it had not been vacated. *Tropf v. State Farm Ins. Co.*, Nos. 213930, 217134, 219994, 227264, 2001 WL 1044875 at *5 (Mich. Ct. App. Sept. 11, 2001).

[9]The Michigan Court of Appeals consolidated the appeals from the orders in the third action with the appeal in the fourth action. Also, as the title of the case suggests, the appellate court reviewed the circuit court's decision in *Tropf v. State Farm Insurance Co.*, No. 98-004354-CK (Oakland Cir. Ct. March 5, 1998). In that case, the Tropfs filed a claim against State Farm in connection with their insurance on the property; the state circuit court found the claim untimely because it was not filed within the policy's one-year limitations period, and the state appellate court affirmed. *See Tropf v. State Farm*, 2001 WL 1044875 at *1.

Rule 11 requires that "to the best of [an attorney's or unrepresented party's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . claims, defenses, and other legal contentions [presented to the court in a paper] are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law" and "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2)-(3). If an attorney or a party violates these requirements, the district court may impose a sanction consisting of "an order directing payment . . . of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Civ. P. 11(c)(2). However, monetary sanctions may not be imposed on represented parties for the violation of subsection (b)(2) involving unwarranted legal contentions. Fed. R. Civ. P. 11(c)(2)(A); *see also Union Planters*, 115 F.3d at 384. In this circuit, the test for the imposition of Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances." *See id.* (quotation omitted).

The district court found that:

> In this case, the Plaintiffs have brought at least five lawsuits related to the same transaction. They have repeatedly lost in the state courts. They have brought suit twice against the Zajacs, individuals who purchased property pursuant to a court order. Moreover, they have unreasonably and vexatiously multiplied the proceedings by filing countless motions with the court, requiring the Defendants to respond, when the underlying action had no merit.

J.A. at 188 (Opinion and Order). We agree with the district court that the Tropfs' attorney presented frivolous legal arguments to the district court and that both the Tropfs and

sanction related to the state courts and state administrative proceedings.

### 1. Monetary Sanctions

The district court found the Tropfs jointly and severally liable with their attorney to MGB for costs and fees in the amount of $14,000 and to the Title Insurance defendants for costs and fees in the amount of $12,165.35.[15]  Under 28 U.S.C. § 1919, "[w]henever any action or suit is dismissed in any district court . . . for want of jurisdiction, such court may order the payment of just costs."  In addition, the Supreme Court has held that district courts can impose sanctions pursuant to Federal Rule of Civil Procedure 11, without impermissibly expanding the judicial authority conferred in Article III, in cases where it is later determined that the court lacks subject matter jurisdiction. *Willy v. Coastal Corp.*, 503 U.S. 131, 137-39 (1992).  In *Willy*, the Court stated that "'[i]t is well established that a federal court may consider collateral issues after an action is no longer pending . . . . [A]n imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather, it requires the determination of a collateral issue:  whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.'" *Id.* at 138 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990)).[16]

---

[15] At the sanctions hearing, counsel for the Title Insurance defendants testified that his costs and fees — including his appearance at the sanctions hearing — amounted to $12,165.35, and counsel for MGB testified that his costs and fees — excluding his appearance at the sanctions hearing — amounted to $13, 833.15.  The court then rounded up the amount to be paid to MGB to $14,000 to include the costs of the sanctions hearing.

[16] We have also held that where a case is dismissed without trial, due process may require "some kind of hearing" for a court to impose sanctions.  *Davis v. Crush*, 862 F.2d 84, 88-89 (6th Cir. 1988).  In this case, the district court held a hearing on sanctions.

commenced, the Tropfs were pursuing an appeal of the related case.  The issues on appeal were not frivolous."  *Id.* at *6.

### Fifth Action

On January 29, 1998, the Tropfs moved for relief from judgment in the 52-3 District Court in Michigan regarding the first action, alleging fraud on the court.  On March 12, 1998, Judge Nicholson granted the motion because Wolenski, the plaintiff in the original action, did not contest it.[10]  MGB was not properly notified of the motion, but once MGB had notice of the order, it moved to intervene and set the order aside.  On August 5, 1998, Judge Nicholson granted MGB's motion to intervene and set the order aside, but Judge Nicholson denied MGB's request for sanctions.  Both parties appealed to the Oakland County Circuit Court, and on February 3, 1999, Judge Breck affirmed the district court's grant of MGB's motion to set aside the order granting relief from judgment and, in a separate opinion and order, reversed the denial of MGB's motion for sanctions.[11]

### Federal Court Actions

While their appeals were still pending in state court, the Tropfs filed a complaint in the United States District Court for the Eastern District of Michigan on June 8, 1999 against MGB and its agents, 20th Century Corporation, Lynne Wolenski and Frank and Jorg Bierekoven, and certain

---

[10] Judge Nicholson awarded the Tropfs $25,000 in money damages and $2,000,000 in sanctions and costs against Wolenski.  J.A. at 550 (Order Granting Defs.' Mot. for Relief March 12, 1998).

[11] According to the U.S. district court, these orders were consolidated on appeal with Judge Gilbert's orders of June 22, 1998 in the third action.  The Tropfs did move for such a consolidation, J.A. at 253-55, but the Michigan Court of Appeals only consolidated the appeals in the third action, the fourth action, and the Tropfs' claim against State Farm.  J.A. at 274.

appraisers.  The complaint alleged that the defendants had conspired against the Tropfs in violation of RICO and had violated the Tropfs' due process and equal protection rights, and the Tropfs sought monetary relief of more than ten million dollars.  On November 9, 1999, the Tropfs filed a second complaint against all of the above parties and Fidelity National Title Insurance Co., Chicago Title Insurance Co., and the Zajacs, alleging the same violations of federal law and of the Tropfs' constitutional rights.  The Title Insurance defendants and MGB subsequently filed motions to dismiss.

The district court consolidated the cases, and on March 16, 2000, granted the motions to dismiss and set a hearing for the imposition of sanctions.  The district court found that (1) the court lacked jurisdiction on the basis of the *Rooker-Feldman* abstention doctrine; (2) the Tropfs' RICO, fraud, due process, and equal protection claims were barred by res judicata; and (3) the Tropfs failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) in regard to their due process and equal protection claims as pursued under 42 U.S.C. § 1983. On April 5, 2000, after a hearing, the district court imposed sanctions permanently enjoining the Tropfs and their attorney from "filing any civil lawsuit in a United States District Court alleging or asserting factual or legal claims based upon or arising out of any of the legal or factual claims alleged in these actions" without written permission from the district court, forbidding the Tropfs from filing any civil lawsuit in any state court or state administrative proceeding alleging or asserting the same legal or factual claims against any of the federal defendants without posting a $50,000 surety bond or cash, and finding the Tropfs jointly and severally liable with their attorney to MGB for monetary sanctions of $14,000 and to the Title Insurance defendants for approximately $12,000. J.A. at 897 (April 5, 2000 Order Granting Sanctions).  The Tropfs timely appealed.

On February 29, 2000, while the federal action was pending, the Tropfs filed another claim in the Oakland County Circuit Court against Wolenski's attorney, Charles J.

federal claims are therefore predicated on their conviction that the state courts were wrong — the very definition of "inextricably intertwined."  Moreover, the Tropfs do not argue that any state law applied to them is itself unconstitutional; instead, they argue only that their equal protection and due process rights were violated in the particular application of the state laws to their case. Thus, the district court was correct in finding that it did not have subject matter jurisdiction based on the *Rooker-Feldman* abstention doctrine.

Because the district court did not have subject matter jurisdiction over the Tropfs' case, it should not have reached the merits of the case.  We therefore do not address the district court's holdings as to res judicata and Federal Rule of Civil Procedure 12(b)(6).

## C.  Sanctions

Following its grant of the defendants' motions to dismiss, the district court held a hearing at which the court imposed three different types of sanctions on the Tropfs and their attorney.  Although the district court dismissed the Tropfs' claims on the ground that it lacked subject matter jurisdiction over them pursuant to the *Rooker-Feldman* doctrine, we conclude that it was nonetheless permissible for the district court to impose on the Tropfs and their attorney monetary sanctions and an injunctive sanction related to the federal courts.  However, we conclude that it was impermissible for the district court to impose on the Tropfs an injunctive

---

precludes the defaulting party from litigating that issue." *Kalamazoo Oil Co. v. Boerman*, 618 N.W.2d 66, 69 (Mich. Ct. App. 2000) (quotation omitted).  Even assuming, however, that the allegations in the Tropfs' complaints that led to the two default judgments were well pleaded, the default judgment in the third action was amended to exclude the circuit court's initial finding of fraud, and the default judgment in the fifth action was explicitly set aside.

Plaintiffs [sic] constitutional rights under the Fourteenth Amendment.

23. That the Michigan Courts have consistently refused to apply the Michigan Law applicable to the Plaintiffs' claims because of the collusive nature of the lawsuits, and, the decisions of the Courts are inconsistent with Michigan Law, have been misapplied, unjustly enrich Defendants and violate Plaintiffs' constitutional rights to be treated equally under the 14th Amendment."

J.A. at 25, 27-28 (Nov. 9, 1999 Compl.). Furthermore, all the rest of the Tropfs' claims not only appear to be inextricably intertwined with the state court judgments regarding the validity of the warranty deed and the land contract, but they also appear to be particular to the Tropfs' case.

The Tropfs allege a variety of vague fraud and RICO claims, as well as constitutional due process and equal protection violations under 42 U.S.C. § 1983. *See* J.A. at 22-33 (Nov. 9, 1999 Compl.).[13] All their claims, however, rely on the argument that the warranty deed and land contract executed by the Tropfs and Wolenski were fraudulent. Because the warranty deed and the land contract were upheld in all of the state actions involving the Tropfs,[14] the Tropfs'

---

[13] The Tropfs cite few specific provisions of state or federal law in their complaint and do not support their claims with specific factual allegations. For instance, they allege that "the Plaintiff [sic] has no adequate remedy at state law, because the Defendants, and each of them, knowingly engaged in collusive litigation against the Plaintiff [sic] appearing in Court in disguise, using deception, and causing the mis-application of Michigan law." J.A. at 27 (Nov. 9, 1999 Compl.).

[14] The Tropfs argue that the two default judgments awarded them in the third and fifth actions constitute state court judgments that the warranty deed and land contract were fraudulent. *See, e.g.*, Appellants' Br. at 14. Under Michigan law, "it is an established principle that a default settles the question of liability as to well-pleaded allegations and

Holzman. The Tropfs initially alleged that Holzman had committed a fraud on the state district court in the first action because he knew the warranty deed and land contract to be invalid. In an amended complaint filed on January 8, 2001, the Tropfs also alleged that Wolenski was a fictitious entity created by Holzman. Pursuant to the injunction issued on April 5, 2000, Holzman moved for the U.S. district court to hold the Tropfs in contempt. On April 25, 2001, the U.S. district court found that the Tropfs had not posted a $50,000 bond or cash in filing their amended complaint and issued an "order of contempt and enjoining and/or dismissing state court proceeding." The Tropfs and their attorney filed an emergency motion in this court to stay the order on April 26, 2001. Finding that the Tropfs still had not posted the bond or cash as ordered, the district court issued a bench warrant for the arrest of Karl Tropf that day. The Tropfs then filed another emergency motion in this court to recall the bench warrant. The Tropfs and their attorney filed a notice of appeal. On May 29, 2001, pending the resolution of this appeal, a motions panel of this court stayed the order and the bench warrant. On August 15, 2001, however, the Oakland County Circuit Court dismissed the Tropfs' action against Holzman, finding that the "action was filed in violation of a federal court order precluding the plaintiffs from filing any further federal or state proceedings relating to the transaction involved in this case."

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of a motion to dismiss on the basis of subject matter jurisdiction. *See Nihiser v. Ohio Envtl. Prot. Agency*, 269 F.3d 626, 627 (6th Cir. 2001). We review a district court's imposition of sanctions pursuant to Federal Rule of Civil Procedure 11 for abuse of discretion. 28 U.S.C. § 1927; *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997). We also review a district court's grant of a permanent injunction

for abuse of discretion. *In re Dublin Sec., Inc. v. Hurd*, 133 F.3d 377, 380 (6th Cir. 1997), *cert. denied*, 525 U.S. 812 (1998).

## B. *Rooker-Feldman* Abstention

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court held that federal court review of state court proceedings is jurisdictionally limited to the Supreme Court of the United States by 28 U.S.C. § 1257.[12]  *See also Patmon v. Michigan Sup. Ct.*, 224 F.3d 504, 506 (6th Cir. 2000). We refer to this doctrine as the *Rooker-Feldman* doctrine. *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The *Feldman* Court stated that "United States District Courts . . . do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may only be had in this Court." *Feldman*, 460 U.S. at 486; *see also Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001). In a more recent decision, the Supreme Court restated the doctrine as follows: "under [the doctrine] a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state

---

[12]Section 1257 provides:
Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

28 U.S.C. § 1257(a).

judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).

We have held that there are two elements to a *Rooker-Feldman* analysis. "First, in order for the *Rooker-Feldman* doctrine to apply to a claim presented in federal district court, the issue before the Court must be [inextricably intertwined] with the claim asserted in the state court proceeding." *Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998) (quotation omitted). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.* (quotation omitted). Second, the *Rooker-Feldman* doctrine precludes federal court jurisdiction where the claim is "a specific grievance that the law was invalidly — even unconstitutionally — applied in the plaintiff's particular case." *Id.* In contrast, the *Rooker-Feldman* doctrine does not bar federal court jurisdiction where the claim is "a general challenge to the constitutionality of the state law applied in the state action." *Id.  See also Patmon*, 224 F.3d at 509-10.

In this case, the district court held that it lacked subject matter jurisdiction under the *Rooker-Feldman* abstention doctrine because "[c]learly, Plaintiffs' complaints amount to nothing more than a challenge to various state-court judgments against them." J.A. at 184 (Opinion and Order). The record fully supports this conclusion. In Count I of their November 9, 1999 complaint before the district court, the Tropfs directly attacked the state court judgments against them:

9.  That the authorities in Michigan will provide no remedy for the theft of Plaintiffs' land except that Plaintiffs accept a collusive, unjust, and un-collectable Judgment . . . and that the Defendants be allowed to wrongfully confiscate the Plaintiffs [sic] land without trial, or compensation . . . violating the